23 A.3d 352

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. R.D., DEFENDANT–APPELLANT.

IN THE MATTER OF THE GUARDIANSHIP OF K.D. AND R.D., MINORS.

Argued May 3, 2011—Decided July 20, 2011.

*Beatrix W. Shear,* Deputy Public Defender, Parental Representation, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Shear* and *Thomas G. Hand,* Designated Counsel, on the briefs).

*Peter D. Alvino,* Senior Deputy Attorney General, argued the cause for respondent New Jersey Division of Youth and Family

Services (*Paula T. Dow*, Attorney General of New Jersey, attorney; *Andrea M. Silkowitz* and *Lewis A. Scheindlin*, Assistant Attorneys General, of counsel; *Mr. Alvino* and *Lisa J. Godfrey*, Deputy Attorney General, on the briefs).

*Phyllis G. Warren*, Assistant Deputy Public Defender, Law Guardian, argued the cause for respondents K.D. and R.D. (*Yvonne Smith Segars*, Public Defender, attorney; *Ms. Warren* and *Lisa M. Black*, Designated Counsel, on the briefs).

*Mary M. McManus–Smith* argued the cause for amicus curiae Legal Services of New Jersey (*Melville D. Miller, Jr.*, President, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

The primary question presented in this appeal is whether determinations made in the adjudication of an abuse or neglect proceeding under Title Nine of the New Jersey Statutes, *N.J.S.A.* 9:6–8.21 to –8.73, can be given collateral estoppel effect in later guardianship/termination of parental rights proceedings under Title Thirty of the New Jersey Statutes, *N.J.S.A.* 30:4C–11 to –15.4. We conclude that, unless the parties are on notice that the Title Nine proceedings are to be conducted under the higher, clear and convincing evidence standard constitutionally required for Title Thirty proceedings and appropriate accommodations are made for the fundamentally different natures of these disparate proceedings, Title Nine determinations cannot be given collateral or preclusive effect in any subsequent and related Title Thirty proceedings.

## I.

This appeal arises from the February 2008 termination of defendant R.D.'s parental rights, pursuant to Title Thirty, to the two youngest of his five children: Katie, born in 1998, and Richard, born in 1999, who had been in defendant's custody and who were born to different mothers, Lydia and Laura, respective-

ly.[1] That determination, however, was preceded by this family's long and plentiful history of contacts with the New Jersey Division of Youth & Family Services (DYFS). Starting with the 1978 birth of Lydia's first child, a daughter named Diane who was not fathered by defendant but for whom he was a step-father, this family's odyssey through the New Jersey child protective system consisted of approximately forty referrals over a thirty year period, ending with the 2008 termination of defendant's parental rights to Katie and to Richard. In specific as to defendant's acts of abuse or neglect that triggered the termination of his parental rights, there were several earlier referrals to DYFS that originated from claims that he had sexually abused some of his children as well as other minors.

That background leads to the events at issue in this appeal. On November 10, 2004, then twenty-two year old Nancy—Lydia's daughter and defendant's step-daughter—reported to DYFS that defendant had been sexually molesting one of her step-sisters. DYFS commenced an investigation that resulted in the December 8, 2004 emergency removal and temporary foster care placement[2] of the five children still remaining in defendant's and Lydia's home: Susan (then 16 years old), Hillary (then 14 years old), Sheryl (then 12 years old), and Katie (then six years old), who were Lydia's and defendant's natural children; and Richard (then five years old), who was the child of defendant and Laura but who was living with defendant, Lydia and his step-sisters. Initially,

---

[1] For privacy and confidentiality reasons, all names given to defendant's children or to the mothers of his children are pseudonyms. *See, e.g., State Division of Youth and Family Services v. I.S.*, 202 *N.J.* 145, 151 n. 1, 996 *A.2d* 986 (2010).

[2] *N.J.S.A.* 9:6–8.29(a) authorizes "[a] police officer or a designated employee of the Probation Division or a designated employee of [DYFS to] remove a child from the place where he is residing ... without the consent of the parent or guardian ... if the child is in such condition that his continuance in said place or residence or in the care and custody of the parent or guardian presents an imminent danger to the child's life, safety or health, and there is insufficient time to apply for a court order[.]"

the children were placed in separate foster homes; one child eventually was placed with a relative. The notice of emergency removal served on defendant advised that defendant "should appear at a court hearing regarding [his children's] removal[ to] be held on" December 10, 2004.

On the return date of the notice of emergency removal, DYFS also filed a verified complaint, "pursuant to *N.J.S.A.* 9:6–8.21 et seq. and *N.J.S.A.* 30:4C–12 and *R.* 5:12A–1 *et seq.*[,]" seeking such relief "as is provided by law ... and as is in the best interests of the children." Based on the information then before it, the Chancery Division—Family Part, acting under Title Nine, issued an order to show cause for protective services with custody. *See N.J.S.A.* 9:6–8.31. That order "determine[d] that the removal of the children is necessary to avoid an ongoing risk to the life, safety or health of the children" and that "[c]ontinuation of residence in the home would be contrary to the welfare of the children[.]" It ordered, among other things, that "[t]he children be immediately made wards of the Court and placed in the immediate custody, care and supervision of [DYFS]" and set a return date of January 5, 2005 to determine whether the terms of that order should be continued.[3]

---

[3] The December 10, 2004 order also required that defendant "disclose to [DYFS] any relatives who may be available as potential caretakers for the minor children on or before [January 5, 2005;]" that "[s]hould [DYFS] determine that the children are at risk for HIV, [DYFS] is authorized to have the children tested for HIV, and [DYFS] further is authorized to release the results of the HIV tests to foster parents, school personnel and others when it is necessary for the care, supervision and/or treatment of the minor children[;]" that "[t]he Office of the Public Defender, Law Guardian Program be assigned as law guardian for the minor children ... entitled and permitted to have access to obtain all records ... and shall have access to the children ... and shall be entitled to speak to [the] children and/or service providers, privately, outside the presence of parents, foster parents, or school or daycare personnel, without further release[;]" that defendant had the right to be represented by counsel in these proceedings and, if he was unable to retain counsel, he could apply for representation from the Public Defender; and that any party could move for the dissolution of that order with two days' notice "to the Court and all parties." None of those provisions is at issue in this appeal.

On January 5, 2005, the Title Nine court reaffirmed its earlier determinations awarding legal custody of the children to DYFS and providing that physical custody of the children continue in foster care. It also ordered that defendant cooperate with a psychological evaluation, including a parenting assessment, and a substance abuse evaluation, and permitted weekly supervised visitation of the children by Lydia, Laura and defendant, "contingent upon 24 hour advance confirmation[.]" Finally, the court imposed various discovery requirements on DYFS, the Law Guardian, and defendant, and set a date for a fact-finding hearing. The fact-finding hearing in respect of the Title Nine abuse or neglect proceeding was held on March 4 and 15, 2005;[4] foreshadowing its later determination in respect of the appropriate burden of proof to be applied, the Title Nine court noted on the record of the March 4, 2005 proceedings that "[j]udgment in this particular case is preponderance of the evidence *or* clear and convincing[ evidence]." (emphasis supplied). In any event, the Title Nine court also individually interviewed each of the five children on March 15, 2005, and heard closing arguments of counsel on April 5, 2005.

On May 2, 2005, the Title Nine court issued a comprehensive written statement of its findings of fact and conclusions of law. The detailed findings in respect of defendant's inappropriate relationship with his sixteen-year-old daughter Susan are not important; suffice it to note that the Title Nine court determined without hesitation that defendant in fact had engaged in an inappropriate sexual relationship with his daughter Susan. *See* *N.J.S.A.* 9:6–1 (defining "[a]buse of a child" to include "(e) the performing of any indecent, immoral or unlawful act or deed, in the presence of a child, that may tend to debauch or endanger or degrade the morals of the child"); *N.J.S.A.* 9:6–8.9 (defining "[a]bused child"); *N.J.S.A.* 9:6–8.21(c) (defining "[a]bused or neglected child"). It found as a fact that

---

[4] *N.J.S.A.* 9:6–8.44 defines the term "fact-finding hearing" as "a hearing to determine whether the child is an abused or neglected child as defined herein."

as of November 2004, [defendant] had an ongoing, inappropriate physical relation-
ship of a sexual nature with his daughter [Susan]. [Susan] did serve as his virtual
"girlfriend," by caring for the rest of the children and cooking, cleaning and
"babysitting" the other children for [defendant] when he was not there. [Susan]
slept every night on the couch with [defendant]. She engaged in regular sexual
behavior with him in violation of [New Jersey's criminal laws]. The nightly "cries"
of their sister [Susan] that the [other] children were forced to endure were the sad,
inappropriate byproduct of the illegal sexual activity of their father with [Susan].

Defendant, of course, had contested the allegations made
against him. Addressing defendant's credibility squarely, the
court stated that, "[b]ased on the totality of the circumstances[,]
the court seriously questions the truthfulness and veracity of
[defendant] as to his testimony and explanations during this trial."
It noted that it "place[d] little weight on [defendant's] testimony
because the court finds that much of what [defendant] stated were
self[-]serving, untrue statements meant to cover up what the court
is going to determine were his wrongful acts." It specifically
found that defendant "was untruthful during much of his testimo-
ny" and that defendant "was not a credible witness."

Turning from its factual and credibility findings to the resulting
and necessary conclusions of law, the Title Nine court first ad-
dressed the applicable burden of proof. It explained that, as a
threshold matter, "[t]he New Jersey Statutes require that in a
fact-finding hearing the State must prove abuse and neglect by a
preponderance of the evidence." (citing *N.J.S.A.* 9:6–8.46(b); *N.J.
Div. of Youth & Family Servs. v. J.Y. & E.M.*, 352 *N.J.Super.* 245,
262, 800 *A.2d* 132 (App.Div.2002)). The court nevertheless ob-
served that "New Jersey case law also permits a court to find
abuse and neglect by 'clear and convincing evidence.'" (quoting
*N.J. Div. of Youth & Family Servs. v. V.K.*, 236 *N.J.Super.* 243,
261–62, 565 *A.2d* 706 (App.Div.1989)). Electing to apply the
higher "clear and convincing evidence" standard to this case—an
election that, at least presumptively, inured to defendant's bene-
fit—it substantively concluded as follows:

The court finds by clear and convincing evidence that [defendant] had and was,
as of December 10, 2004, engaging in ongoing and wrongful sexual relations with
his daughter [Susan]. As of December 10, 2004, [Susan] was [slightly over] 16
years ... of age. The court finds, again by clear and convincing evidence[,] that

this wrongful sexual contact had begun to occur prior to [Susan]'s sixteenth birthday so as to circumvent any misguided argument for mitigation by [defendant] that as of that date [Susan] reached the age of consent. Prior to [Susan's most recent birthday less than two months before], each inappropriate sexual act engaged in by [defendant] with [Susan] was a violation of *N.J.S.A.* 2C:14–2(a)(2)(a), Aggravated Sexual Assault, a crime of the First Degree. After [Susan]'s sixteenth birthday, each such act was [in] violation of *N.J.S.A.* 2C:14–2(c)(3), also Aggravated Sexual Assault, but then a Second Degree crime.

The court finds by clear and convincing evidence that this behavior was abuse or neglect as to [Susan] in that [defendant] committed sexual abuse as to her. This is a violation of *N.J.S.A.* 9:6–8.21(c)(3). This behavior also placed the physical, mental and emotional health of all of the children in imminent danger of being impaired as a result of [defendant] failing to exercise a minimum degree of care by exposing all the children to his inappropriate sexual contact with [Susan]. The court therefore finds by clear and convincing evidence that [defendant] violated *N.J.S.A.* 9:6–8.21(c)(4).

Based on those factual and legal predicates, the Title Nine court entered an order dated May 5, 2005 adjudging that it was "satisfied that the best interests of the minor children require[d] the entry [of an] order ... that [r]emoval of the children was necessary due to imminent danger to the children's life, safety or health and the children have been placed outside the home for their safety and protection." Incorporating by reference the May 2, 2005 written decision, the May 5, 2005 order repeated the court's earlier determinations as well as the provisions for custody, evaluations, visitation and services earlier set forth in the court's January 5, 2005 order; it was followed by a compliance review hearing and a later dispositional hearing.[5]

At the conclusion of the December 6, 2005 dispositional hearing, the Title Nine court determined that "[i]t is not and will not be safe to return the child[ren] home in the foreseeable future because the risk of harm to the children has not been eliminated" and that DYFS had "provided reasonable efforts to finalize the permanency plan, including reunification where appropriate[ and] therapy/counseling for [the parents.]" Despite those determinations, the court concluded that "[t]his case is an exception to the

---

[5] *N.J.S.A.* 9:6–8.45 defines the term "dispositional hearing" as "a hearing to determine what order should be made."

requirement to file [a Title Thirty complaint for the t]ermination of [p]arental [r]ights because ... compelling reason exists in this case in that [DYFS] desires to continue to provide services to this family." It ordered various forms of specific relief: psychotherapy for defendant; individual counseling sessions for Lydia; a psychological evaluation, substance abuse evaluation and random urine screenings for Laura; individual family counseling for each of the children; and individual mentors for each of the children. *See N.J.S.A.* 9:6–8.51 (setting forth required contents of order of disposition). The December 6, 2005 order also set a date for a permanency hearing. *See N.J.S.A.* 9:6–8.54(b)(2) and (3) (describing purpose of permanency hearing).

The permanency hearing was held on March 21, 2006. At the conclusion of that hearing, and in addition to finding that "[i]t is not and will not be safe to return the child[ren] home in the foreseeable future" and that DYFS had "provided reasonable efforts to finalize the permanency plan," the Title Nine court further concluded that "[t]ermination of [p]arental [r]ights followed by [a]doption, for [Katie] and [Richard], is an appropriate plan because [defendant] and [the children's mothers] have failed to complete services [and, as a result] there continues to be a risk of harm to the children." It scheduled a compliance hearing for June 5, 2006, a date that also served as the deadline for the filing of a Title Thirty guardianship/termination of parental rights complaint by DYFS.

Defendant never appealed any of the determinations made by the Title Nine court.

DYFS filed a timely Title Thirty guardianship complaint seeking to terminate defendant's, Lydia's and Laura's parental rights to Katie and Richard.[6] During pre-trial proceedings and piggy-

---

[6] As originally filed on June 5, 2006, DYFS's complaint sought only the termination of defendant's and Laura's parental rights as to Richard only. On October 20, 2006, DYFS filed an amended complaint adding Katie and another daughter to those in respect of whom DYFS sought to terminate parental rights;

backing on the Title Nine court's determination to render its decision as satisfying the "clear and convincing evidence" standard, DYFS moved for "an order barring the re-litigation of issues resolved in the previous Title [Nine] action involving [defendant]." Specifically, DYFS sought collateral estoppel effect for the Title Nine court's conclusion that defendant had placed the physical, mental and emotional health of all of the children in imminent danger of being impaired as a result of defendant's failure to exercise a minimum degree of care by engaging in an inappropriate sexual relationship with Susan and by exposing all of the children to that inappropriate relationship. In DYFS's view, that finding—that abuse or neglect as defined in *N.J.S.A.* 9:6–8.21 had been proved by clear and convincing evidence—was identical to the necessary finding under the first prong of the "best interests of the child" test required in order to terminate parental rights, that is, that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship[.]" *N.J.S.A.* 30:4C–15.1(a)(1). Therefore, DYFS argued, the Title Nine finding should preclude re-litigation of, at a minimum, the first prong of the best interests of the child standard required to terminate parental rights, particularly because the Title Nine abuse or neglect finding had been made by the higher, clear and convincing evidence standard constitutionally required for termination of parental rights determinations.

The Title Thirty court heard argument on that motion on May 1, 2007 and, by an order of that same date, it "bar[red] the re-

---

because Lydia was the mother of both Katie and the additional daughter added by this amendment, she too became a party. By a case management order dated January 18, 2008, the Title Thirty court removed the additional child from the litigation and "[s]he [was] returned to [the earlier filed Title Nine abuse and neglect action], which shall be re-opened and scheduled for a permanency hearing[.]" In the end, neither mother—Lydia for Katie or Laura for Richard—sought review of the Title Thirty court's judgment in respect of each of them. Therefore, for the sake of accuracy and simplicity, this opinion addresses only the termination of defendant's parental rights to his two youngest children, Katie and Richard.

litigation of the sexual abuse of the children's sibling[.]" It concluded that "the findings made by the [Title Nine] court that this abuse placed the physical, mental and emotional health of the children in imminent danger of being impaired" because defendant had "fail[ed] to exercise a minimum degree of care by exposing all the children to his inappropriate sexual contact with the children's siblings" would have collateral estoppel effect in the Title Thirty guardianship/termination of parental rights action. It spread its reasoning on the record:

> In this case, [the Title Nine court] announced at the beginning of [the Title Nine] proceeding that [it] may utilize a clear and convincing [evidence] standard of proof. And, that certainly put the defendant on notice that [the Title Nine] proceeding would be something that could be considerably important in the [Title Thirty] termination trial . . . in which it's mandated that the clear and convincing standard applied.

> So, now with this understanding that you were put on notice of this at the beginning of the [Title Nine] proceeding, there is no constitutional infirmity in my opinion. And, . . . I believe that [DYFS]'s analysis of . . . all of the elements recited in *Olivieri* [*v. Y.M.F. Carpet, Inc.*, 186 *N.J.* 511, 521, 897 *A.2d* 1003 (2006) ] as applied to this case are applicable.

> I adopt that reasoning, and I rule that [in] this case—you are collaterally estopped from attacking the factual conclusions reached by [the Title Nine court] in the [abuse and neglect] proceeding by clear and convincing evidence, and I will adopt those as part of this trial at the time it concludes.

Ultimately, trial on the Title Thirty guardianship/ termination of parental rights complaint was held on December 10, 2007 and January 11, 2008; closing arguments were delivered on January 18, 2008. On February 26, 2008, the Title Thirty court issued a lengthy and detailed written opinion, concluding that "the State has proven each element of the best interests of the child standard set out in *N.J.S.A.* 30:4C–15.1 by clear and convincing evidence[.]" Based on those conclusions, it ordered that "the parental rights of the father, [defendant], the mother [Lydia], and the mother [Laura] are hereby terminated as to [Katie] and [Richard, and DYFS] is hereby awarded guardianship of [Katie] and [Richard]."

Its analysis reveals the methodology it applied. At the outset, the Title Thirty court addressed the collateral estoppel effect of the Title Nine action. Applying the factors identified in *Olivieri,*

*supra*, it concluded "that all the elements of collateral estoppel applied" and that "none of the exceptions to the application of collateral estoppel apply." It underscored that "prior to the fact[-]finding, [the Title Nine court] announced to the parties that [it] may apply the clear and convincing [evidence] standard" and that, "[t]herefore, the parties had notice that, at the fact[-]finding, the [c]ourt may make a finding by the clear and convincing [evidence] standard." It also emphasized that "[i]n the order entered in [the Title Nine] case, the clear and convincing [evidence] standard is checked." It decided that it properly could and in actuality would give collateral estoppel effect to the Title Nine abuse or neglect findings.

Turning to the substantive questions before it, the Title Thirty court reviewed the evidence adduced during the guardianship/termination of parental rights trial, followed by its findings of fact and conclusions of law, all within the context of applying the four-prong "best interests of the child" standard codified in *N.J.S.A.* 30:4C–15.1(a)(1) to (a)(4). In respect of the first prong of that test—that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship[,]" *N.J.S.A.* 30:4C–15.1(a)(1)—DYFS presented no independent proofs upon which the Title Thirty court could perform an independent evaluation. Instead, as urged by DYFS, the Title Thirty court accepted the findings of the Title Nine court as conclusive; it "adopt[ed] th[o]se factual findings and, based on [the] same, [found] by clear and convincing evidence that [defendant] committed sexual abuse of [his daughter Susan] when she was in his care and the other children in the household." Again tethered solely to the Title Nine court's findings now given collateral estoppel effect, the Title Thirty court noted that "[t]hose children were exposed to [defendant]'s sexual abuse of [Susan] and this [c]ourt cannot wait until they are abused themselves or harmed emotionally by remaining in a household where sexual abuse is ongoing." It further reasoned that "if the extent of sexual abuse had been known earlier, [defendant]'s parental rights would have been challenged earlier[,]" thus concluding that DYFS had satisfied its

burden of proof under the first prong of *N.J.S.A.* 30:4C–15.1(a) singly resulting from the collateral estoppel effect of the Title Nine court's findings.

The Title Thirty court then focused on the second prong of the "best interests of the child" test: that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." *N.J.S.A.* 30:4C–15.1(a)(2). In contrast to its findings in respect of prong one of that test, the Title Thirty court relied exclusively on the evidence adduced in the Title Thirty proceeding—the testimony and reports of two experts tendered by DYFS who had evaluated defendant, as well as defendant's own testimony—in determining that

> [defendant]'s testimony is insincere and not candid. He blames everyone else for his problems[.] He did not engage in treatment to correct his sexual problems. He did not complete [a psychological] test for [one of the experts] to help her evaluation. He provided no proof to rebut [DYFS's] case that he could not change his ways. This [c]ourt finds by clear and convincing evidence that [defendant] is unwilling and unable to eliminate the harm facing the children in that he has not treated his pedophilia, and should not have contact with his children or any other children, unsupervised. [DYFS] has met its burden of proof as to prong two.

Addressing prong three—whether DYFS "has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights[,]" *N.J.S.A.* 30:4C–15.1(a)(3)—the Title Thirty court again grounded its determinations exclusively on the proofs actually presented in the Title Thirty proceeding. Assessing those proofs, it explained that defendant "has been repeatedly sent for services to correct his pedophilia[,]" but that defendant "has been resistant to these services and failed to admit any wrong doing." It noted that defendant has "insisted that the findings of [the Title Nine court] were in error, despite overwhelming evidence of his sexual abuse to his child." It stated that defendant "received psychological evaluations and pedophile counseling which he did not complete because of his attitude." Exasperated by defendant's "con-

tinuing recalcitrance, [the Title Thirty court found] by clear and convincing evidence that [DYFS] ha[d] made reasonable efforts to provide services to [defendant] to correct the circumstances that led to the removal of the children." It concluded that "prong three has been satisfied by [DYFS] as to [defendant] by clear and convincing evidence."

Finally, the Title Thirty court shifted to the fourth prong of the "best interests of the child" test, namely, whether "[t]ermination of parental rights will not do more harm than good." *N.J.S.A.* 30:4C–15.1(a)(4). Relying in large part on the bonding evaluations generated in, and the expert testimony presented during, the Title Thirty proceeding, the court noted that the attachment between defendant and Katie and Richard is " 'superficial in nature' " and that " '[e]ven if the children are not going to go to pre-adopt[ive] homes, harm would be greater in allowing an insecure attachment to continue, since an insecure attachment in itself does harm.' " It reasoned that "[w]hen this is coupled with the lack of sexual counseling, [defendant] should have no contact with his children or any other children." It concluded that "the termination of parental rights will not cause more harm than good by clear and convincing evidence as to [defendant]."

Defendant appealed, and the Appellate Division affirmed. *Div. of Youth & Family Servs. v. R.D.*, 412 *N.J.Super.* 389, 991 *A.*2d 233 (App.Div.2010).[7] The panel noted that "[c]ollateral estoppel

---

[7] Before the Appellate Division, defendant advanced three principal points: that the Title Thirty court "erred in applying collateral estoppel to incorporate [the Title Nine court]'s findings from the [abuse or neglect] fact-finding hearing against [defendant] in the guardianship hearing[;]" that both the Title Nine and the Title Thirty courts "relied on unreliable incompetent evidence to support their findings of fact[;]" and that "DYFS failed to establish all of the elements of *N.J.S.A.* 30:4C–15.1." For ease of reference, those appeal points are referred to as the collateral estoppel issue, the admissibility of evidence issue, and the sufficiency of evidence issue, respectively. Although the Appellate Division's original opinion discussed all three issues, the published version addressed only the collateral estoppel issue, noting that, "[a]t the direction of the court per *Rule* 1:36–2(a), the discussion of the [admissibility of evidence and sufficiency of

bars a party from relitigating any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action, where the burden of proof is the same." *Id.* at 400, 991 *A*.2d 233 (citing *In re Coruzzi*, 95 *N.J.* 557, 567, 472 *A*.2d 546, *appeal dismissed*, 469 *U.S.* 802, 105 *S.Ct.* 56, 83 *L.Ed.*2d 8 (1984); *B.F. v. Div. of Youth & Family Servs.*, 296 *N.J.Super.* 372, 389, 686 *A*.2d 1249 (App.Div.1997)). Quoting *Olivieri, supra*, 186 *N.J.* at 521, 897 *A*.2d 1003 (enumerating factors court must consider in determining whether collateral estoppel applies), it explained that "[a]lthough collateral estoppel is not mandated by constitution or statute, it serves important policy goals such as finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." *R.D., supra*, 412 *N.J.Super.* at 400, 991 *A*.2d 233 (additional citations, internal quotation marks and editing marks omitted). It acknowledged that "[e]ven where the [collateral estoppel] requirements are met, a court will not apply this doctrine when it would be unfair to do so." *Ibid.* (citing *Olivieri, supra*, 186 *N.J.* at 521–22, 897 *A*.2d 1003).

In determining whether collateral estoppel applied in this case, the Appellate Division first and aptly recognized that "[a]buse or neglect and termination proceedings are brought under separate statutory schemes, require different burdens of proof, and allow for different remedies." *Id.* at 400–01, 991 *A*.2d 233 (citation, internal quotation marks, and editing marks omitted). It noted that "[w]hile DYFS has the burden of establishing abuse or neglect in a fact-finding hearing by a preponderance of the evidence, the burden of proof in a Title [Thirty] termination case is the clear and convincing evidence standard." *Id.* at 402, 991 *A*.2d 233 (citations omitted). That said, it emphasized that "[w]hen the underlying finding of abuse, however, is made by clear and convincing evidence and not merely by a preponderance of the

---

evidence] issues . . . in the appeal have been omitted from the published version of the opinion." *R.D., supra*, 412 *N.J.Super.* at 405, 991 *A*.2d 233.

evidence, it *may* support a termination of parental rights." *Ibid.* (emphasis supplied; citing *N.J. Div. of Youth & Family Servs. v. V.K.,* 236 *N.J.Super.* 243, 261, 565 *A.*2d 706 (App.Div.1989), *certif. denied,* 121 *N.J.* 614, 583 *A.*2d 315 (1990)).

The panel highlighted that, unlike prior precedent cited by the parties, "the [Title Nine] court in the abuse or neglect proceeding here applied the higher standard of clear and convincing evidence to determine that defendant sexually abused [Susan] and that this behavior placed the physical, mental, and emotional condition of all the children in imminent danger of being impaired." *Id.* at 403, 991 *A.*2d 233. It reasoned that "[b]ecause [DYFS] proved its allegation of sexual abuse by the higher standard in the Title [Nine] action, [the Title Thirty court] properly used this finding to support the decision to terminate." *Ibid.* Echoing the Title Thirty court's rationale, it concluded that

[t]he fact[-]finding in the abuse or neglect proceeding satisfied the first prong of the best interests standard in the termination proceeding. All of the requirements for collateral estoppel applied to bar relitigation: the issue of sexual abuse was identical to the issue in the prior proceeding; the issue of abuse and its impact on the children was in fact litigated in the Title [Nine] action; defendant could have appealed the prior finding after [the Title Nine court] entered the disposition order; the determination of this issue was essential to the entry of judgment in the Title [Nine] action; and the parties essentially were identical.

[*Ibid.* (citations omitted).]

The Appellate Division observed further that "defendant does not argue that he lacked a full and fair opportunity to litigate this issue in the prior action[,]" *ibid.,* and that, "to the extent that defendant claims he was not alerted to the fact that the court in the abuse or neglect trial could make a finding by the higher standard of clear and convincing evidence, he is mistaken." *Id.* at 404, 991 *A.*2d 233. Rejecting, as factually inapposite, defendant's reliance on *N.J. Division of Youth & Family Services v. I.Y.A.,* 400 *N.J.Super.* 77, 90–93, 946 *A.*2d 62 (App.Div.2008), it declared itself "satisfied that [the Title Thirty court] properly employed collateral estoppel by adopting [the Title Nine court]'s finding by clear and convincing evidence that defendant committed sexual

abuse of [Susan] when she was in his care and the other children were in the household." *Id.* at 404–05, 991 *A.*2d 233.[8]

■ Defendant sought certification, which was granted. *N.J. Div. of Youth & Family Servs. v. R.D.,* 203 *N.J.* 437, 3 *A.*3d 1226 (2010). The parties were granted leave to file supplemental briefs, and Legal Services of New Jersey was granted leave to appear and argue amicus curiae.[9]

## II.

In respect of the principal point advanced in this appeal, defendant argues that determinations made in a Title Nine abuse or neglect proceeding cannot be given collateral estoppel effect in a Title Thirty guardianship/termination of parental rights trial. He urges that "[b]y utilizing collateral estoppel to re-write Titles [Nine] and [Thirty], DYFS has encroached on the Legislature's authority." According to defendant, granting collateral estoppel effect to Title Nine determinations in subsequent Title Thirty proceedings violates the constitutional doctrines of separation of powers and due process of law, and creates uncertainty in both proceedings.

DYFS disagrees. It notes, preliminarily, that defendant failed to object to the Title Thirty court's conclusion that it would give

---

[8] In the portion of its opinion that was not published, the Appellate Division also rejected defendant's remaining appeal points: the admissibility of evidence issue and the sufficiency of evidence issue. *See supra* at 104–05 n. 7, 23 *A.*3d at 361 n. 7.

[9] After the Court heard oral argument in this appeal, the Law Guardian brought two reported Appellate Division cases to the Court's attention; defendant objected to that submission because it failed to comply with *Rule* 2:6–11(d) (requiring that post-brief submissions of authority be confined to "relevant cases decided or legislation enacted subsequent to the filing of the brief"). Defendant's objection is technically correct, and the Law Guardian's post-brief/post-argument submission is stricken. That said, although compliance with our *Court Rules* is strongly and universally encouraged, the Court nevertheless retains the discretion to consider any relevant authority that may appreciably assist the Court in its task.

collateral effect to the Title Nine court's determination. It substantively defends the Title Thirty court's conclusion by rejecting the notion that, in this context, there is anything of relevance in the different burdens of proof between an abuse or neglect factfinding hearing—a preponderance of the evidence—and a termination of parental rights trial—by clear and convincing evidence. It does so principally by asserting that the evidence rules applicable to those two species of proceedings are the same. It also states that, because defendant could have but did not appeal the Title Nine findings against him, he cannot be heard to complain about their natural and foreseeable application in the later Title Thirty proceedings.

The Law Guardian generally supports the positions advanced by DYFS, arguing that all of the requirements for the technical application of the doctrine of collateral estoppel are met here, and that a proper balance of the equities presented leads to the conclusion that it was fair and equitable to apply the doctrine.

Amicus, Legal Services of New Jersey, argues that the use of the "clear and convincing evidence" standard in abuse or neglect proceedings is contrary to law and violated procedural due process concerns, and that the application of collateral estoppel in the circumstances presented was in error.

### III.

As a threshold matter, this appeal requires an examination of the interplay between Title Nine abuse or neglect proceedings and Title Thirty guardianship/termination of parental rights actions. It is to that examination that we first turn.

### A.

New Jersey's scheme for the protection of children against abuse or neglect is codified in Title Nine of the New Jersey Statutes. *N.J. Div. of Youth & Family Servs. v. P.W.R.*, 205 *N.J.* 17, 31, 11 *A.*3d 844 (2011) ("Abuse and neglect actions are con-

trolled by the standards set forth in Title Nine of the New Jersey Statutes.") (citation omitted); *N.J. Div. of Youth & Family Servs. v. M.C. III*, 201 *N.J.* 328, 343, 990 *A.*2d 1097 (2010) ("Title [Nine] controls the adjudication of abuse and neglect cases. *N.J.S.A.* 9:6–8.21 to –8.73."). Title Nine's purpose is clear:

> As we have explained before, the purpose of Title Nine of the New Jersey Statutes is to provide for the protection of children under 18 years of age who have had serious injury inflicted upon them by other than accidental means. The safety of the children served shall be of paramount concern. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected.
>
> [*State v. Buda*, 195 *N.J.* 278, 306, 949 *A.*2d 761 (2008) (quoting *State v. P.Z.*, 152 *N.J.* 86, 96–99, 703 *A.*2d 901 (1997) (quoting *N.J.S.A.* 9:6–8.8) (internal quotation marks and editing marks omitted)).]

In this context, "[t]he safety of children is the paramount concern." *M.C. III*, *supra*, 201 *N.J.* at 343, 990 *A.*2d 1097 (citing *N.J.S.A.* 9:6–8.8); *see also P.W.R.*, *supra*, 205 *N.J.* at 31, 11 *A.*3d 844 (" 'Title [Nine]'s primary concern is the protection of children, not the culpability of parental conduct.' " (quoting *G.S. v. Dep't of Human Servs.*, 157 *N.J.* 161, 177, 723 *A.*2d 612 (1999))).

There is a salient characteristic that sets Title Nine proceedings apart: the immediacy and speed with which they are to be conducted. The stated legislative purpose of Title Nine is "to assure that the lives of innocent children are *immediately* safeguarded from further injury[.]" *N.J.S.A.* 9:6–8.8(a) (emphasis supplied). Title Nine specifically commands that "[u]pon receipt of [a child abuse] report, [DYFS] shall *immediately* take such action as shall be necessary to insure the safety of the child[,]" *N.J.S.A.* 9:6–8.11 (emphasis supplied), so much so that it requires that DYFS "shall maintain, at all times, an emergency telephone service for the receipt of calls involving a report, complaint or allegation of child abuse or neglect." *N.J.S.A.* 9:6–8.12.[10] Even if a

---

[10] An earlier version of *N.J.S.A.* 9:6–8.12 explicitly required that DYFS "shall maintain in each of its districts on a 24 hour daily basis throughout each year an emergency telephone service for the receipt of child abuse calls." *L.* 1971, *c.*

child is taken into protective custody—thereby removing the immediacy of the risk of harm—"[t]he entire period of protective custody shall not exceed 3 court days[,]" *N.J.S.A.* 9:6–8.19(c), and Title Nine mandates that "[c]ommencement of cases of child abuse or neglect must be the first order of priority in the [Superior Court, Chancery Division,] Family Part." *N.J.S.A.* 9:6–8.22. When a child is removed on an emergency basis from his/her residence without the parents' or guardians' consent or without a court order, *see N.J.S.A.* 9:6–8.29, three steps are required: (1) DYFS "shall make every reasonable effort to communicate *immediately* with the child's parent or guardian ... and advise the parent or guardian to appear in the appropriate [court] *within two court days* [,]" *N.J.S.A.* 9:6–8.30(a) (emphasis supplied); (2) DYFS "shall cause a complaint to be filed under [Title Nine] *within two court days* after such removal takes place[,]" *N.J.S.A.* 9:6–8.30(b) (emphasis supplied); and (3) the Title Nine court "shall hold a hearing *on the next court day* [.]" *N.J.S.A.* 9:6–8.31(a) (emphasis supplied). Conversely, a hearing on an application by a parent or guardian to return a child removed on an emergency basis "shall be held *within 3 court days* of the application." *N.J.S.A.* 9:6–8.32 (emphasis supplied). Title Nine likewise places short deadlines on the issuance, service and return of the abuse or neglect summons and complaint, *see N.J.S.A.* 9:6–8.37 and –8.38, any warrant issued thereunder, *N.J.S.A.* 9:6–8.39(c), and on adjournments of hearings, *N.J.S.A.* 9:6–8.48(a); *N.J.S.A.* 9:6–8.49. In the aggregate, Title Nine embodies clear legislative commands requiring that Title Nine proceedings be commenced, conducted and concluded with extreme dispatch, if not with considered and deliberate haste.

In contrast, "[t]he focus of a termination [of parental rights] proceeding is the 'best interests' of the child." *In re Guardianship of J.N.H.*, 172 *N.J.* 440, 471, 799 *A.*2d 518 (2002). Following this Court's decision in *New Jersey Division of Youth &*

---

437, § 5 (eff. Feb. 19, 1972) (emphasis supplied), *later amended by, L.* 2004, *c.* 130, § 24 (eff. Aug. 27, 2004).

*Family Services v. A.W.*, 103 *N.J.* 591, 607, 512 *A.*2d 438 (1986), the Legislature codified the "best interests of the child" test, providing that DYFS

> shall initiate a petition to terminate parental rights on the grounds of the "best interests of the child" . . . if the following standards are met:
>
> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) [DYFS] has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [*N.J.S.A.* 30:4C–15.1(a).]

And, unlike the short time-frames within which Title Nine proceedings are to be conducted, "[a] final hearing for guardianship [under Title Thirty] shall be held within three months from the date the petition is filed[.]" *N.J.S.A.* 30:4C–15.2.

■ In Title Thirty guardianship/termination of parental rights cases, "we are guided by the principle that 'clearly favors keeping children with their natural parents and resolving care and custody problems within the family.'" *I.S., supra,* 202 *N.J.* at 165, 996 *A.*2d 986 (quoting *In re Guardianship of J.C.,* 129 *N.J.* 1, 7–8, 608 *A.*2d 1312 (1992)). That requirement stems from the deep-rooted but sometimes conflicting principles that "'parents have a constitutionally-protected, fundamental liberty interest in raising their biological children, even if those children have been placed in foster care[,]'" and that "'the State's *parens patriae* responsibility to protect the welfare of children . . . is limited to situations in which the state has demonstrated that the child's parent or custodian is unfit, or that the child has been neglected or harmed.'" *Id.* at 166, 996 *A.*2d 986 (quoting *J.C., supra,* 129 *N.J.* at 9–10, 608 *A.*2d 1312).

Although an abuse or neglect proceeding under Title Nine may lead to a guardianship/termination of parental rights proceeding

under Title Thirty, *see, e.g., N.J.S.A.* 30:4C–15(a) (providing that termination of parental rights complaint shall be filed whenever finding of abuse or neglect under Title Nine has been entered); *J.N.H., supra,* 172 *N.J.* at 452, 799 *A.*2d 518, an abuse or neglect finding is not the only means by which to trigger a complaint seeking termination of parental rights. As the Appellate Division recently noted:

> It is thus clear on the face of *N.J.S.A.* 30:4C–15 that a finding of abuse or neglect in an action under Title [Nine] is only one of five statutory grounds for the termination of parental rights. Indeed, we take judicial notice of the fact that most termination of parental rights cases appealed to this court are based on *N.J.S.A.* 30:4C–15(c), which provides for termination where "the best interests of any child ... require that he be placed under guardianship." *See also N.J.S.A.* 30:4C–15.1(a) (setting forth the four statutory tests for determining whether termination is in the "best interests of the child"). Therefore, except for a guardianship action under *N.J.S.A.* 30:4C–15(a) based on a finding of abuse or neglect under Title [Nine], DYFS may bring an action for the termination of parental rights under any of the other subsections of *N.J.S.A.* 30:4C–15 without first bringing an action under Title [Nine].
>
> [*N.J. Div. of Youth & Family Servs. v. A.P.,* 408 *N.J.Super.* 252, 259, 974 *A.*2d 466 (App.Div.2009) (footnote omitted).]

█ That said, certain procedural principles are common to cases of this genre, whether they involve allegations of abuse or neglect under Title Nine or seek to terminate parental rights under Title Thirty. In either of those circumstances, if the trial court has engaged in fact-finding, "we generally defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." *N.J. Div. of Youth & Family Servs. v. G.M.,* 198 *N.J.* 382, 396, 968 *A.*2d 698 (2009) (quoting *N.J. Div. of Youth & Family Servs. v. E.P.,* 196 *N.J.* 88, 104, 952 *A.*2d 436 (2008) (internal quotation marks omitted)). Consistent with that deference, appellate courts also "recognize that because of the family courts' special expertise in family matters, appellate courts should accord deference to family court fact[-]finding." *Ibid.* (quoting *Cesare v. Cesare,* 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998) (internal quotation marks and editing marks omitted)).

As a practical matter, Title Nine and Title Thirty proceedings can be consolidated. *See N.J.S.A.* 9:6–8.24(e) ("Any [abuse or neglect] hearing held before the Family Part may serve as a permanency hearing for the child to provide judicial review and approval of a permanency plan if all the [review and approval] requirements [under Title Thirty] are met."). Further, children and indigent parents in both Title Nine and Title Thirty proceedings are entitled to representation by the Office of the Public Defender. *Compare N.J.S.A.* 9:6–8.43(a) (providing that parent or guardian has right "to retain counsel and consult with him[,]" that if parent or guardian is indigent, "he may apply for an attorney through the Office of the Public Defender[,]" and that "the court shall appoint a law guardian for the child as provided by [*N.J.S.A.* 9:6–8.23(a) and (b) ]"), *with N.J.S.A.* 30:4C–15.4(c) (providing that "[t]he Office of the Public Defender is authorized to provide representation to children and indigent parents in termination of parental rights proceedings under Title [Thirty]").

 Hand-in-hand with those procedural similarities, there also are differences between the respective statutory schemes. Most importantly, the burden of proof applicable to each proceeding differs markedly and fundamentally: Title Nine abuse or neglect proceedings are governed by the preponderance of the evidence standard, *N.J.S.A.* 9:6–8.46(b)(1) (noting that "[i]n a fact-finding hearing ... any determination that the child is an abused or neglected child must be based on a preponderance of the evidence"), while Title Thirty guardianship/termination of parental rights proceedings implicate core constitutional rights and therefore are governed by the clear and convincing evidence standard. *A.W., supra,* 103 *N.J.* at 611, 512 *A.*2d 438 (citing *Santosky v. Kramer,* 455 *U.S.* 745, 747–48, 768–70, 102 *S.Ct.* 1388, 1402–04, 71 *L.Ed.*2d 599, 603, 616–17 (1982), for proposition that "the Fourteenth Amendment requires application of at least a 'clear and convincing' standard of proof to a state's parental-rights-termination proceeding").

Moreover, although the hallmark of Title Nine proceedings is the expediency at which they are to be conducted, that consideration does not animate or inform Title Thirty proceedings to a like degree: while Title Nine proceedings are designed to effectuate an immediate but interim result, Title Thirty proceedings are characterized by a deliberate, methodical process aimed towards a final result, one that, by reason of the fundamental constitutional considerations at stake, cannot be hurried. Finally, there are minor differences between the proceedings in respect of the standards for admissibility of evidence. *See N.J.S.A.* 9:6–8.46(a) (providing for limited special rules of evidence admissibility in abuse or neglect matters); *N.J.S.A.* 9:6–8.46(b) (requiring that "only competent, material and relevant evidence may be admitted" at abuse or neglect fact-finding hearing); *N.J.S.A.* 9:6–8.46(c) (requiring that "[i]n a dispositional hearing and during all other stages of [an abuse or neglect] proceeding under [Title Nine], only material and relevant evidence may be admitted").

The differences and similarities between Title Nine abuse or neglect proceedings and Title Thirty guardianship/ termination of parental rights proceedings set the boundaries of the central question of this appeal: whether determinations made in an abuse or neglect proceeding under Title Nine can be given collateral estoppel effect in later guardianship proceedings under Title Thirty. The answer to that inquiry first requires an exploration of the metes and bounds of the doctrine of collateral estoppel.

### B.

As a general principle, "[c]ollateral estoppel is that branch of the broader law of *res judicata* which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez,* 75 *N.J.* 181, 186, 380 *A.*2d 1128 (1977) (citations omitted); *see also Tarus v. Borough of Pine Hill,* 189 *N.J.* 497, 520, 916 *A.*2d 1036 (2007); *Sacharow v. Sacharow,* 177 *N.J.* 62, 76, 826 *A.*2d 710 (2003); *Zirger v. Gen. Accident Ins. Co.,*

144 *N.J.* 327, 337, 676 *A.*2d 1065 (1996). "[I]ts applicability also extends to questions of law where the claims arise from the same transaction, or if injustice would result." *Id.* at 187, 380 *A.*2d 1128 (citations and internal quotation marks omitted). No doubt, " '[c]ollateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice." *Id.* at 192, 380 *A.*2d 1128 (quoting *Ashe v. Swenson,* 397 *U.S.* 436, 443, 90 *S.Ct.* 1189, 1194, 25 *L.Ed.*2d 469, 475 (1970)). Further, the term collateral estoppel " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Ibid.* (quoting *Ashe, supra,* 397 *U.S.* at 443, 90 *S.Ct.* at 1194, 25 *L.Ed.*2d at 475).

As developed and refined over time, there are five identified conditions precedent to the application of the collateral estoppel doctrine:

"[f]or the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding."

[*Olivieri, supra,* 186 *N.J.* at 521, 897 *A.*2d 1003 (quoting *In re Estate of Dawson,* 136 *N.J.* 1, 20–21, 641 *A.*2d 1026 (1994)).]

Yet, " 'even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.' " *Id.* at 521–22, 897 *A.*2d 1003 (quoting *Pace v. Kuchinsky,* 347 *N.J.Super.* 202, 215, 789 *A.*2d 162 (App.Div.2002)). And, a principal determinative in whether to apply collateral estoppel is "the benefits flowing from [the] doctrine[ ], such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.' " *Id.* at 522, 897 *A.*2d 1003 (quoting *Hennessey v. Winslow Twp.,* 183 *N.J.* 593, 599, 875 *A.*2d 240 (2005) (citation omitted)).

The relevant focus, then, must center on whether the conditions precedent to the application of the collateral estoppel doctrine have been satisfied and, if so, whether the application of the doctrine is equitable under the circumstances.

## C.

After canvassing the principles governing the doctrine of collateral estoppel, the Appellate Division determined that "[t]he fact[-]finding in the abuse or neglect proceeding satisfied the first prong of the best interests standard in the termination proceeding." *R.D., supra,* 412 *N.J.Super.* at 403, 991 *A.*2d 233. It reasoned that

> [a]ll of the requirements for collateral estoppel applied to bar relitigation: the issue of sexual abuse was identical to the issue in the prior proceeding; the issue of abuse and its impact on the children was in fact litigated in the Title [Nine] action; defendant could have appealed the prior finding after [the Title Nine court] entered the disposition order; the determination of this issue was essential to the entry of judgment in the Title [Nine] action; and the parties essentially were identical.
>
> [*Ibid.* (citations omitted).]

It emphasized that "defendant does not argue that he lacked a full and fair opportunity to litigate this issue in the prior action." *Ibid.* (citation omitted). It further stated that, "to the extent that defendant claims he was not alerted to the fact that the court in the abuse or neglect trial could make a finding by the higher standard of clear and convincing evidence, he is mistaken[,]" observing expansively that the Title Nine court "indicated as much in the trial." *Id.* at 404, 991 *A.*2d 233. It also noted that, "[c]ontrary to defendant's assertions, the guardianship court did not fail to correctly apply the exceptions to collateral estoppel." *Ibid.* It rejected defendant's challenge to the application of the collateral estoppel doctrine because, "[f]irst, defendant makes this argument without any citation to the record[,]" and "[s]econd, [the Title Thirty court] thoroughly considered and analyzed the exceptions to the application of collateral estoppel and concluded that none of them applied." *Ibid.*

Although the Appellate Division correctly determined that *Olivieri*'s five-factor test for the application of collateral estoppel was satisfied in these circumstances, the Appellate Division's ultimate conclusion that none of the exceptions to the application of the doctrine were present cannot be sustained. Within the context of this appeal, a strict analysis of the five conditions precedent to the application of the doctrine of collateral estoppel leads to the initial conclusion the Appellate Division reached: (1) the issue sought to be precluded in the Title Thirty proceedings—that Katie's and Richard's "safety, health or development has been or will continue to be endangered by the parental relationship[,]" *N.J.S.A.* 30:4C–15.1(a)(1)—was identical to the abuse or neglect issue decided pursuant to *N.J.S.A.* 9:6–8.9 and –8.21 in the prior Title Nine proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the Title Nine court issued a final judgment on the merits; (4) the determination of the issue of harm to the children was essential to the Title Nine court's judgment; and (5) defendant was a party to the Title Nine proceeding. But, because the inquiry does not end with the simple application of *Olivieri*'s five-factor test, the facts of this case compel rejection of the notion that the first prong of the "best interests of the child" standard applicable to termination of parental rights proceedings under *N.J.S.A.* 30:4C–15.1(a)(1) was satisfied by the abuse or neglect findings made by the Title Nine court.

It bears re-emphasizing that " 'even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.' " *Olivieri, supra,* 186 *N.J.* at 521–22, 897 *A.*2d 1003 (quoting *Pace, supra,* 347 *N.J.Super.* at 215, 789 *A.*2d 162). Those equitable considerations cause us to part company with the Appellate Division. We do so "for reasons related to the conduct of these proceedings, and coupled with the public policy considerations that inform" the core differences between Title Nine and Title Thirty proceedings. *Id.* at 525, 897 *A.*2d 1003.

As noted earlier, Title Nine proceedings differ from Title Thirty proceedings in three fundamental respects: Title Nine proceedings are intended to be started and completed quickly, while Title Thirty proceedings stress a more deliberative and comprehensive approach; Title Nine proceedings are geared towards an interim form of relief—removal of the child from immediate harm, with permanent placement to be considered at a later date—while the relief sought in Title Thirty proceedings is the permanent termination of parental rights that will allow the child to become eligible for adoption by another; and, most importantly, the differing standards of proof applicable to those disparate proceedings highlight a fundamental difference between the two. In respect of this latter point, the Title Nine court's passing reference that "[j]udgment in this particular case is preponderance of the evidence or clear and convincing [evidence]" plainly cannot suffice to place defendant on fair notice that the Title Nine proceeding might have a preclusive effect on later—but not yet filed—termination of parental rights proceedings. Nor did a gratuitous lifting of the standard of proof in a Title Nine proceeding to that of a Title Thirty proceeding *ipso facto* transform the former into the collateral estoppel predicate of the latter.

Those basic and vital differences persuasively urge that it well may be unfair and inequitable to give Title Nine findings preclusive effect in Title Thirty proceedings.[11] In that respect, albeit in a different context, this appeal facially does not substantively differ from what was decided in *Olivieri, supra,* where collateral estoppel effect was denied to "the determinations arising from

---

[11] Those same considerations inform the salutary rule that, based on the differences in purpose and procedure, bars the preclusive use of determinations made in respect of the issuance or denial of preliminary injunctions in a later-made summary judgment motion. *See, e.g., Country Floors, Inc. v. Gepner,* 930 F.2d 1056, 1063 (3d Cir.1991) (concluding that trial "court's assessment of the evidence before it on summary judgment, since it included evidence produced at the preliminary injunction hearing and the factual findings developed at that hearing, is in error"); *see also Doeblers' Pa. Hybrids, Inc. v. Doebler,* 442 F.3d 812 (3d Cir.2006) (applying *Country Floors* standard).

unemployment compensation proceedings because of the nature and extent of the process afforded in and the limited purposes underlying those proceedings." 186 *N.J.* at 514, 897 *A.*2d 1003.

## D.

■ Yet, it cannot be conclusively stated that a Title Nine determination never will be given collateral estoppel effect in a Title Thirty proceeding: once the differences between the two are minimized sufficiently, the equitable considerations that militate against the application of the collateral estoppel doctrine are largely ameliorated. At their core, the distinctions outlined between Title Nine and Title Thirty proceedings are firmly rooted in principles of procedural due process, the fundamental notion that litigants are entitled to notice and a meaningful opportunity to be heard. *See State v. Schmidt,* 206 *N.J.* 71, 87, 19 *A.*3d 457 (2011) (quoting *Simmermon v. Dryvit Sys., Inc.,* 196 *N.J.* 316, 330, 953 *A.*2d 478 (2008) for proposition that " 'minimum procedural requirements [of due process] are notice plus an opportunity to be heard and participate in the litigation' " (citation and internal quotation marks omitted)); *Fuentes v. Shevin,* 407 *U.S.* 67, 80, 92 *S.Ct.* 1983, 1994, 32 *L.Ed.*2d 556, 569 (1972) ("For more than a century the central meaning of procedural due process has been clear: '[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' " (quoting *Baldwin v. Hale,* 68 *U.S.* 223, 233, 1 *Wall.* 223, 17 *L.Ed.* 531, 534 (1864))). In that context,

> due process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.
>
> [*Morrissey v. Brewer,* 408 *U.S.* 471, 481, 92 *S.Ct.* 2593, 2600, 33 *L.Ed.*2d 484, 494 (1972) (citations, internal quotation marks, and editing marks omitted).]

Those plain notions of procedural due process—fair notice and a meaningful opportunity to be heard—must occupy the central stage of analysis.

Again, there are three principal factors that inform the equitable differences between Title Nine and Title Thirty proceedings that, in turn, must be addressed in order to allow the findings in the former to have collateral estoppel effect in the latter: the speed at which the respective proceedings are to be conducted; the nature of the relief to be awarded; and the differences in the standards of proof. Those differences, albeit of substance, are not complete barriers to the application of the collateral estoppel doctrine.

 Guided by the flexibility necessarily inherent in all due process considerations, a Title Nine court that reasonably foresees its proceedings ripening into a subsequent Title Thirty proceeding may seek to short-circuit the duplication of presenting proofs in a later Title Thirty proceeding, a salutary principle that, in part, undergirds the doctrine of collateral estoppel. It may achieve that goal by respecting procedural due process concerns in three major but basic respects. First, the Title Nine court must provide advance notice to the parties that, if supported by the proofs, it will make its findings using the higher Title Thirty "clear and convincing evidence" standard; [12] that notice must be clear and unequivocal, and must fairly and reasonably advise the parties that any Title Nine determinations made under the higher, clear and convincing evidence standard will have preclusive effect in any subsequent Title Thirty proceeding. Stated differently, the parties must be on fair notice that they will have one opportunity to litigate whether the parent is causing harm to the child, and that opportunity will be during the Title Nine proceedings.

---

[12] Of course, if the proofs only satisfy the preponderance of the evidence standard, the Title Nine court may still make its abuse or neglect findings for purely Title Nine purposes and without preclusive effect in a later Title Thirty proceeding.

Second, the Title Nine court must make clear to the parties that, although the relief it may issue in the Title Nine portion of the proceedings is, by its nature, interim, the determinations made in respect of that interim relief—particularly those concerning harm to the child—may have preclusive effect on the final, permanent relief arising out of a Title Thirty proceeding. Third, and finally, to approximate parity in the proceedings, the Title Nine court must relax the time deadlines and, to the extent necessary, use in the Title Nine proceeding the admissibility of evidence standards applicable to Title Thirty proceedings.

We now apply those principles to this appeal.

### E.

To the extent the Title Thirty court concluded that DYFS had satisfied by clear and convincing evidence the first prong of the "best interests of the child" standard codified at *N.J.S.A.* 30:4C–15.1(a)(1) exclusively on the basis of the earlier Title Nine findings of abuse or neglect, that conclusion cannot be sustained for several reasons. At the outset, the record lacks adequate support for a finding that the Title Nine court fairly placed defendant on notice that it would apply the higher, Title Thirty-mandated clear and convincing evidence standard in lieu of the lower, Title Nine preponderance of the evidence standard; the Title Nine court's passing reference that it could determine the case under either standard was too indefinite to properly place defendant on notice of the effect or ramifications arising from that choice. Also, the Title Nine court addressed only the interim determination of whether defendant had abused or neglected his children, and did not likewise speak to the best interests of the child standard codified in *N.J.S.A.* 30:4C–15.1. In the end, the Title Nine court made no accommodation in the scheduling of the Title Nine proceedings to address the time differences between Title Nine and Title Thirty proceedings.

Furthermore, although none of the Title Thirty court's conclusions in respect of the remaining three prongs of the "best

interests of the child" standard, *N.J.S.A.* 30:4C–15.1(a)(2), (a)(3) and (a)(4), relied on any of the Title Nine court's findings and, instead, appear supported by the evidence adduced before the Title Thirty court, those conclusions too cannot be considered final; to the extent that a determination under the "harm to the child" prong of the "best interests of the child" standard of necessity bleeds into the remaining prongs of that standard, the Title Thirty court's conclusions in respect of the second, third and fourth prongs of the "best interests of the child" standard also must be re-evaluated in light of the new findings needed as to prong one.

For those reasons, we reverse the Appellate Division's decision that affirmed the Title Thirty court's conclusion that, based on the Title Nine proceedings, DYFS had proved, by clear and convincing evidence, that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship[.]" *N.J.S.A.* 30:4C–15.1(a)(1). That reversal also requires that, on remand, the Title Thirty court must make its independent findings in respect of the first prong of the test and then, in the context of that determination, separately adjudge the remainder of the "best interests of the child" test.[13]

---

[13] In his petition for certification, defendant also raised the admissibility of evidence issue and the sufficiency of evidence issue he had raised unsuccessfully before the Appellate Division. *See supra* at 104–05 n. 7, 23 *A.*3d at 361 n. 7; 107 n. 8, 23 *A.*3d at 363 n. 8. Defendant's petition for certification was granted without limitation. *R.D., supra,* 203 *N.J.* at 437, 3 *A.*3d 1226. Upon closer examination, however, it is apparent that neither the admissibility of evidence issue nor the sufficiency of evidence issue satisfies the requirements of *Rule* 2:12–4 (explaining that "[c]ertification will be granted only if the appeal presents a question of general public importance which has not been but should be settled by the Supreme Court or is similar to a question presented on another appeal to the Supreme Court; if the decision under review is in conflict with any other decision of the same or a higher court or calls for an exercise of the Supreme Court's supervision and in other matters if the interest of justice requires"). To the extent the earlier grant of certification extended beyond the collateral estoppel issue to encompass defendant's admissibility of evidence issue or sufficiency of evidence issue, it is vacated as improvidently granted.

### IV.

The judgment of the Appellate Division is reversed, and the cause is remanded to the Chancery Division—Family Part for a new evidentiary trial limited to the question presented by *N.J.S.A.* 30:4C–15.1(a)(1): whether the safety, health or development of Katie and/or Richard has been or will continue to be endangered by the parental relationship with defendant. Once those proofs are developed on remand, the court is directed further to aggregate those proofs with the earlier developed proofs as to the second, third and fourth prongs of the "best interest of the child" test and re-weigh its entire analysis and conclusions in respect of all of the elements of *N.J.S.A.* 30:4C–15.1(a). Jurisdiction is not retained.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS—6.

*Opposed*—None.

