RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2143-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

H.R.,

 Defendant-Appellant.
________________________________

IN THE MATTER OF M.H., a minor.
________________________________

 Submitted June 6, 2017 – Decided June 21, 2017

 Before Judges Yannotti and Gilson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Bergen County,
 Docket No. FN-02-0318-14.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Marina Ginzburg, Designated
 Counsel, on the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Mehnaz
 Rahim, Deputy Attorney General, on the brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Lisa J. Godfrey,
 Assistant Deputy Public Defender, on the
 brief).

PER CURIAM

 Defendant H.R. appeals from an order entered by the Family

Part on December 16, 2014, which found that she abused or neglected

her son, M.H. We affirm.

 This appeal arises from the following facts. On May 13, 2014,

members of a multi-jurisdictional Heroin Task Force were

conducting surveillance in the City of Paterson and observed H.R.

drive her car into the area and park. A male approached and entered

the car. H.R. then drove her car a short distance and pulled over.

The male then exited the car and walked away.

 Based on their training and experience, the officers thought

that H.R. had engaged in an illegal narcotics transaction. The

officers followed and then stopped H.R.'s vehicle. The officers

identified themselves and asked H.R. to exit the car. M.H. was in

the back seat of the vehicle. He was two years old at the time.

The officers informed H.R. of her Miranda rights.1

 H.R. told the officers that there was heroin in the car. She

then handed the officers five glassine folds of suspected heroin.

H.R. was arrested. She told the officers that she did not have

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 2 A-2143-15T4
anyone to pick up her son. The police transported H.R. and the

child to the Hawthorne police headquarters. The officers then

contacted the Division of Child Protection and Permanency

(Division), and one of its workers responded.

 Because H.R. did not have anyone to care for M.H., and because

there was a final restraining order against G.H., the child's

biological father, which precluded him from having any contact

with the child, the Division removed the child on an emergency

basis and placed him in a non-relative resource home.

 On May 15, 2014, the Division filed a complaint in the Family

Part, Passaic County, pursuant to N.J.S.A. 9:6-8.21 to -8.73, and

N.J.S.A. 30:4C-12 to -24, seeking custody, care, and supervision

of the child. The Division alleged that H.R. abused or neglected

M.H. by subjecting him to a substantial risk of harm when she made

an illegal purchase of drugs in Paterson with the child in the

car.

 The Family Part judge entered an order that day finding that

the removal of the child was required due to the imminent danger

to the child's life, safety, and health. The order placed the

child in the Division's custody, care, and supervision. Among

other provisions, the order required H.R. and G.H. to undergo

psychological and substance-abuse evaluations, and to participate

 3 A-2143-15T4
in services. H.R. was allowed weekly, supervised visits with the

child.

 The order also stated that the action should have been brought

in Bergen County and it required the Division to re-file the

complaint in that vicinage. The order further required H.R. and

G.H. to show cause why the child should not remain under the care

and supervision of the Division.

 Thereafter, the Division filed its complaint in the Family

Part, Bergen County, and on the return date of the order to show

cause, the Family Part judge entered an order dated June 26, 2014,

continuing the Division's custody, care, and supervision of the

child. The judge later conducted case management reviews on August

14, 2014, and September 9, 2014.

 M.H. remained in the Division's care, custody and

supervision. The judge ordered H.R. and G.H. to participate in

substance abuse evaluations, submit to random drug/alcohol

screenings, attend counseling and individual therapy, and attend

parenting skills training.

 The Family Part judge conducted a fact-finding hearing on

December 5, 2014. At the hearing, the Division presented testimony

from Totowa Police Officer Daniel V. DiBlasio, Division caseworker

Kim Puyron-Darling, substance abuse evaluator Stacey Bosso, and

Bergen County Sheriff's Detective Tasharah Windley. H.R. did not

 4 A-2143-15T4
appear at the hearing, but she was represented by counsel. The

Division did not view G.H. as an offending parent. He appeared at

the hearing, without counsel.

 Officer DiBlasio testified that in November 2012, he was

dispatched to an apartment in Totowa, after the police received a

call stating that controlled dangerous substances (CDS) had been

found in the apartment. G.H. told DiBlasio that he found several

plastic baggies filled with cocaine in the bedroom he shared with

H.R. DiBlasio entered the bedroom and observed M.H. sleeping in

his crib. M.H. was eight months old at the time. DiBlasio arrested

H.R. for possession of cocaine. M.H. remained in G.H.'s care.

 Division caseworker Puyron-Darling testified that she became

involved with H.R. after she was arrested for cocaine possession.

The case remained opened for services from 2012 to 2014 since the

Division had concerns about H.R.'s use of illegal drugs and

domestic violence. Puyron-Darling stated that H.R. did not comply

with the recommended substance abuse treatment, and she only

submitted one urine screen.

 In March 2014, the Division received another referral that

H.R. was abusing marijuana. She denied the allegation and agreed

to come to the Division's office and submit to a substance abuse

evaluation. H.R. failed to appear for the scheduled evaluation.

In April 2014, the Division received another referral about H.R.'s

 5 A-2143-15T4
alleged use of illegal drugs. Puyron-Darling spoke with H.R., and

she agreed to come to the Division's office and undergo a substance

abuse evaluation. H.R. did not appear for the evaluation.

 On May 13, 2014, the Paterson police informed the Division

that H.R. had been arrested for heroin possession and her two-

year-old son was in the car when H.R. was arrested. The officer

reported that the child required placement because H.R. said she

had no family or friends who were available to care for the child.

 Officer Windley testified about H.R.'s arrest on May 13,

2014. The officer stated that on that day, she was part of the

Heroin Task Force in Paterson. Windley said she was conducting

surveillance in an area of Paterson known for its high crime rate

and drug sales.

 At around 10:00 a.m., Windley noticed a woman driving a grey

Ford Focus circling the area. The woman pulled over and a young

man entered the vehicle. The woman drove a block and stopped. The

man exited the car. Windley testified that, based on her training

and experience, these actions were consistent with drug

transactions in an area known for drug sales.

 Windley stopped the car and asked the driver to step out. She

identified H.R. as the driver of the car. H.R. admitted that she

had just purchased heroin from the man who exited her car. H.R.

voluntarily retrieved the drugs from her purse and gave the officer

 6 A-2143-15T4
five bags of heroin. Windley observed M.H. sitting in a car seat

in the car. She described the car as "very dirty" and strewn with

clothes and trash. The child's hands and face were dirty. M.H. was

only wearing pajamas, and he had no shoes on his feet. Urine from

the child's diaper had soaked through the child's pajamas onto the

car seat.

 H.R. could not provide the name of M.H.'s father or any other

person who might be able to pick him up. Windley then transported

the child to the Hawthorne police station, and the Division was

contacted. H.R. was placed under arrest and transported to the

Hawthorne police station in another vehicle.

 Windley pointed out that M.H. could not walk around the police

station because he had no shoes. H.R. did not have a diaper bag,

diapers, or a drinking cup for the child. H.R. explained that she

did not have time to grab these items because she ran out of the

house.

 Windley stated that she was concerned for the child because

he was in the car with his mother while she purchased drugs from

an unknown man in a "high" drug and crime area. The officer said

there was a danger that H.R. could be car-jacked, raped, or robbed.

The officer noted that about sixty percent of drug dealers carry

weapons, such as handguns and knives, while engaging in drug

 7 A-2143-15T4
transactions. Many drug purchasers in the area report that they

had been robbed by drug dealers.

 The Division offered H.R. services in an attempt to achieve

reunification, and Preferred Children's Services (PCS) performed

a substance abuse evaluation of H.R. Bosso, the substance abuse

evaluator, testified that H.R. had admitted to a long-standing

drug addiction, which began when H.R. was an adolescent.

 H.R. reported that she had started ingesting oxycodone daily,

and that by the age of seventeen, she began to snort about two

bundles of heroin each day. Her addiction progressed, and H.R.

began injecting up to five bags of heroin at a time, and using

eleven-and-a-half bundles of the drug each day. H.R. also admitted

to smoking marijuana and snorting cocaine every day, and this led

to a daily crack habit. At the height of her addiction, H.R. was

spending $700 a day on CDS.

 H.R. said she stopped using drugs at age nineteen, after she

was incarcerated. She claimed to have remained sober until November

2013, when she relapsed on heroin. She was then twenty-three years

old. H.R. began snorting heroin daily, and she progressed to

injecting anywhere from four bags to two bundles a day. Bosso

testified that, at the time of the evaluation, H.R. was injecting

four bags to two bundles of heroin a day, and she snorted cocaine

three days before the evaluation. The Division referred H.R. to a

 8 A-2143-15T4
detoxification program. She attended an intake appointment on

August 12, 2014, but left the next day. Bosso said H.R. never

returned to the program, and she had no further contact with PCS.

 On December 16, 2014, the judge filed a written opinion

finding that H.R. had abused or neglected the child as a result

of her actions on May 13, 2014. The judge found that the Division's

witnesses were credible. She determined that H.R. had acted in a

grossly negligent manner, and she placed M.H. at substantial risk

of harm by abusing drugs and transporting the child in a car while

she engaged in an illegal drug purchase. The judge memorialized

her findings in an order dated December 16, 2014.

 The judge later conducted hearings in the matter on February

5, 2015; May 7, 2015; August 6, 2015; November 12, 2015; and

December 18, 2015. H.R. only appeared at the August hearing. On

December 18, 2015, the judge awarded sole legal and physical

custody of the child to G.H. and terminated the litigation. This

appeal followed.

 On appeal, H.R. argues that: (1) the Division failed to prove

by a preponderance of the material and relevant evidence that she

abused or neglected M.H.; and (2) the Division did not prove that

she failed to exercise a minimum degree of care or that M.H. was

actually harmed by her actions.

 9 A-2143-15T4
 The scope of our review in an appeal from an order finding

abuse or neglect is limited. N.J. Div. of Youth & Family Servs.

v. R.D., 207 N.J. 88, 112 (2011). We must uphold "factual findings

undergirding the trial court's decision if they are supported by

'adequate, substantial and credible evidence' on the record." N.J.

Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)

(quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188

(App. Div. 1993)).

 An "abused or neglected child" is defined by N.J.S.A. 9:6-

8.21(c)(4) as a child who is less than eighteen years of age and

 whose physical, mental, or emotional condition
 has been impaired or is in imminent danger
 of becoming impaired as the result of the
 failure of his parent or guardian . . . to
 exercise a minimum degree of care (a) in
 supplying the child with adequate food,
 clothing, shelter, education, medical or
 surgical care though financially able to do
 so or though offered financial or other
 reasonable means to do so, or (b) in providing
 the child with proper supervision or
 guardianship, by unreasonably inflicting or
 allowing to be inflicted harm, or substantial
 risk thereof[;] . . . or by any other acts of
 a similarly serious nature requiring the aid
 of the court[.]

 "'Whether a parent or guardian has failed to exercise a

minimum degree of care' in protecting a child is determined on a

case-by-case basis and 'analyzed in light of the dangers and risks

associated with the situation.'" N.J. Div. of Youth & Family Servs.

 10 A-2143-15T4
v. N.S., 412 N.J. Super. 593, 614 (App. Div. 2010) (quoting G.S.

v. Dep't of Human Servs., 157 N.J. 161, 181-82 (1999)). "'[M]inimum

degree of care' refers to conduct that is grossly or wantonly

negligent, but not necessarily intentional." G.S., supra, 157 N.J.

at 178.

 This standard "implies that a person has acted with reckless

disregard for the safety of others." N.J. Div. of Youth & Family

Servs. v. S.I., 437 N.J. Super. 142, 153 (App. Div. 2014) (quoting

G.S., supra, 157 N.J. at 179). Moreover, a parent may be found to

have abused or neglected a child when the parent creates a

substantial risk of harm, since a court "need not wait until a

child is actually irreparably impaired by parental inattention or

neglect." In the Matter of the Guardianship of D.M.H., 161 N.J.

365, 383 (1999).

 Here, there is sufficient credible evidence to support the

trial court's finding that H.R. abused or neglected M.H. by

engaging in an illegal drug transaction with an unknown man, in a

high-crime area. There also is sufficient credible evidence in the

record to support the judge's determination that H.R. failed to

meet the child's basic needs because she was only focused on her

need to obtain illegal drugs.

 H.R. does not dispute that she went to Paterson to purchase

heroin, and she had the child with her in the car. H.R.

 11 A-2143-15T4
acknowledges that she allowed an unidentified man to enter her car

and she admits that the police found heroin in her car. She argues,

however, that there is nothing to suggest she was under the

influence of narcotics at the time. She contends that the "simple

act" of having narcotics in her car did not place M.H. at

substantial risk of harm. She also contends that the child was not

harmed by his filthy clothes, soiled diaper, and lack of shoes.

 These arguments are without merit. The evidence shows that

H.R. has a long history of substance abuse and a history of arrests

related to her possession of CDS. On May 13, 2014, H.R. took the

child with her when she went to purchase heroin, and as Officer

Windley testified, H.R. exposed herself, as well as her child, to

the risk of serious criminal activity.

 Windley noted that drug dealers often possess weapons while

engaging in drug transactions, and that drug purchasers report

they have been robbed by drug dealers. Windley also pointed out

that, by allowing an unidentified person to enter her car, H.R.

could have been the victim of a sexual assault or a carjacking.

As the Family Part judge correctly determined, in doing so, H.R.

placed the child at substantial risk of harm.

 Moreover, the evidence presented at the fact-finding hearing

showed that when H.R. was arrested, the officer noted that M.H.'s

face and hands were filthy. He was wearing pajamas and did not

 12 A-2143-15T4
have shoes. His clothing also was soaked in urine, apparently

because his diaper had not been changed. H.R. did not have a diaper

bag with her. She claimed this was merely an oversight, but the

judge properly drew the inference that H.R. was "so focused on

getting her drugs that she neglected to care for her child's most

basic needs."

 Thus, there is sufficient credible evidence in the record to

support the judge's finding that H.R.'s actions were grossly

negligent and placed the child at substantial risk of harm. The

record therefore supports the judge's determination that H.R.

failed to exercise the minimum degree of care, and as a result,

M.H. was abused or neglected, as defined in N.J.S.A. 9:6-

8.21(c)(4).

 H.R. argues that the judge erred by admitting what she

characterized as inadmissible hearsay and irrelevant evidence and

testimony. She contends the judge erred by admitting the Division's

investigation report, which included statements from persons who

were interviewed. She contends that the judge erred by admitting

reports from the Bergen County Sheriff's Office and the Totowa

police, which discussed certain previous incidents involving H.R.

 H.R. further argues that the judge erred by admitting a July

11, 2014 report of a psychological evaluation prepared by Dr.

Margaret DeLong. In addition, H.R. contends the court should not

 13 A-2143-15T4
have admitted a report of a urine screening, which she claims was

not properly authenticated.

 We find no merit in these arguments. We note that the

essential facts supporting the judge's finding that H.R. abused

or neglected M.H. were established by testimony presented at the

fact-finding hearing, which the judge found credible. The judge

admitted the Division's investigative report, but noted that she

would not consider any inadmissible hearsay in that report.

 Furthermore, Officers Windley and DiBlasio testified as to

the key facts set forth in the investigative reports of the Bergen

County Sheriff's Office and the Totowa police. In addition, the

judge admitted Dr. DeLong's report, but the statements in that

report were not essential to the judge's decision, which was based

primarily on the events of May 13, 2014.

 H.R.'s remaining arguments are without sufficient merit to

warrant discussion. R. 2:11-3(e)(1)(E).

 Affirmed.

 14 A-2143-15T4