RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2541-15T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

M.C.,

 Defendant-Appellant,

and

J.C. and J.R.,

 Defendants.
__________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF C.C., M.R. and J.R.,

 Minors.
__________________________________

 Argued March 2, 2017 – Decided April 5, 2017

 Before Judges Hoffman and Whipple.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Atlantic
 County, Docket No. FG-01-21-15.
 Catherine Reid, Designated Counsel, argued the
 cause for appellant (Joseph E. Krakora, Public
 Defender, attorney; Ms. Reid, on the briefs).

 Leah A. Schmidt, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Ms. Schmidt, on the brief).

 Caitlin McLaughlin, Designated Counsel,
 argued the cause for minors (Joseph E.
 Krakora, Public Defender, Law Guardian,
 attorney; Ms. McLaughlin, on the brief).

PER CURIAM

 Defendant, M.C., is appealing from an order terminating her

parental rights over her three children.1 Because the court re-

opened the guardianship proceeding sua sponte and terminated

defendant's parental rights, we vacate and remand.

 Defendant is the mother of Caleb, Maddie, and Jack.2 This

case commenced on October 26, 2012, when defendant, pregnant with

Maddie, went to the hospital following a seizure and tested

positive for opiates. The Division of Child Protection and

1
 To protect the identity of the children and for ease of
reference, we use pseudonyms. Defendant has a fourth child who
is not part of this litigation and who was born sometime after the
hearings in this case.
2
 J.C. is the father of Caleb, and J.R. is the father of Maddie
and Jack. In February 2015, default was entered against J.C. J.R.
executed a voluntary surrender of his parental rights. Neither
father has appealed the decision in this matter.

 2 A-2541-15T4
Permanency (Division) received a referral regarding the incident.

The referral was unfounded, but a protection plan was put in place

requiring defendant's care of Caleb be supervised by an approved

relative. The Division received another referral on December 2,

2012, following the birth of Maddie. Maddie tested positive for

illegal substances, but defendant had been given morphine during

the birth; therefore, it was unclear what substance caused the

positive result.

 The Division filed a complaint for care and supervision of

Caleb and Maddie in December 2012, which the court granted.

Custody remained with defendant while she continued attending

substance abuse treatment. On April 10, 2013, the court granted

the Division care, custody, and supervision of Caleb and Maddie,

after the Division received another drug-related referral and

determined the approved supervisors could no longer properly

supervise defendant and the children. The children were

subsequently removed from defendant's care. Defendant was then

incarcerated at some point after the children's removal.

 In May 2014, the Division received another referral following

Jack's birth, because Jack suffered from withdrawal symptoms and

was diagnosed with neonatal abstinence syndrome (NAS). Defendant

tested positive for opiates and admitted she relapsed and was

using cocaine. Jack remained in the NICU in the hospital for one

 3 A-2541-15T4
month, then was placed in a relative resource home, separate from

Maddie and Caleb. Caleb and Maddie were initially placed with a

maternal great aunt following removal. In June 2013, the great

aunt requested the children be removed, and since then Maddie and

Caleb have lived with foster parents in a resource home. All of

the children's resource parents are willing to adopt them. Bonding

evaluations were conducted between the children and their resource

parents. Jo Anne Gonzalez, Ph.D. noted,

 If returned to either one of their parents,
 [Caleb] and [Maddie] will be living with
 parents with whom they have not maintained any
 kind of consistent relationship. Neither
 parent has been able to reach a consistent
 level of stability . . . that will allow them
 to reduce the possible harm [they] would face
 if they are not successful in maintaining
 themselves free of drug use.

Dr. Gonzalez recommended Caleb and Maddie be adopted by their

resource parents. Dr. Gonzalez made the same recommendations for

Jack and his resource parents.

 Throughout the litigation, the Division attempted to help

defendant get substance abuse treatment. Our review of the record

demonstrates these efforts had very limited success. However,

defendant did successfully complete parenting classes through the

Family Life Center during her involvement with the Division, and

she graduated from the program on June 26, 2015.

 4 A-2541-15T4
 Defendant underwent a psychological evaluation and bonding

evaluations with her children, performed by Dr. Gonzalez on April

21, 2015. Dr. Gonzalez diagnosed defendant with bipolar disorder,

opioid dependence (in early remission), cocaine abuse, and

unspecified personality disorder (with borderline and antisocial

traits). Dr. Gonzalez recommended defendant's rights be

terminated because she was "not in a position . . . to provide a

safe and stable environment for her children."

 Dr. Gonzalez opined the children loved their mother, and she

loved them but described their bond as "insecure." She recommended

contact between defendant and the children be supervised and the

children remain with their foster families. She recommended a

goal of adoption for the children following termination of parental

rights.

 Defendant also underwent a psychiatric evaluation by

Alexander Iofin, M.D., on April 28, 2015. Dr. Iofin diagnosed

defendant with substance abuse, as well as various personality

disorders. Dr. Iofin opined "[I]t will be unreasonable to

anticipate that she will be able to function psychiatrically in a

way that will allow her to be considered for changing the goal of

termination of parental rights to reunification with her children

in the foreseeable future."

 5 A-2541-15T4
 The guardianship trial occurred on December 7, 2015, December

9, 2015, and January 6, 2016. The Division presented the testimony

of the Division caseworker and Dr. Gonzalez. Dr. Gonzalez

testified as to her evaluations with defendant and the children.

The caseworker summarized defendant's involvement with the

Division and the services the Division offered. Defendant also

testified. She stated she had been working full-time for Bayview

Cottage, a nursing home owned by J.J.,3 J.R.'s grandmother, for

about four years. She worked there, "so that [her] house is taken

care of and my utilities are taken care of." Defendant did not

recall the caseworker ever asking for a pay stub, and stated she

did not provide the Division with J.J.'s contact information

because J.J. is in and out so much that she would not answer if

they called. She testified she helped with cooking, cleaning,

serving meals, and paperwork.

 Defendant also testified she had not let the Division

investigate her home because she "didn't see it as a problem" and

"felt that it might be a little invasive" to her roommates at the

time. She informed the court J.J. owned the house she lived in,

and the house had running water, heat, and electricity.

3
 We use initials to protect the identity of a non-party witness.

 6 A-2541-15T4
 On January 26, 2016, the trial judge issued a decision finding

the Division had satisfied prongs one, three, and four of the

four-prong "best interests of the child" test, N.J.S.A. 30:4C-

15.1(a), but had not met the requirements to satisfy prong two by

clear and convincing evidence. The judge stated the matter was

dismissed without prejudice but would be subject to reinstatement,

conditioned upon M.C. allowing the Division access to her home for

inspection within ten days, as well as providing proof of

employment within ten days. Failure to comply would result in "FG

litigation being reopened by the court," and the matter was to

"return . . . under the FN docket for review of the above mandates."

 The court reconvened on February 9, 2016.4 The Division then

presented testimony from J.J., who informed the court defendant

has not worked for her in more than three years but did

occasionally run errands for her. J.J. also testified she owns

the house where defendant resides, but was not paying the mortgage

on the house and did not pay for the utilities.

 The Division also presented testimony from the caseworker who

investigated defendant's home. The caseworker testified there was

no heat in the home, but defendant was using multiple space heaters

to heat the living room and kitchen areas. Defendant informed her

4
 The trial judge confirmed the FG was dismissed at that time.

 7 A-2541-15T4
the gas was not turned on at the house. There were additional

safety hazards, including a broken step on the basement stairs and

no covering on an entrance to the basement from the backyard. The

caseworker observed what she thought was mold in a corner of the

basement. There was a crib for Jack, but no beds for Caleb or

Maddie. A boarded up window was located at the front of the house.

 The next day, the court opened the record stating "we're here

in the associated matters of DCP&P v. [M.C.] and [J.C.], docket

number FN-[01][]-[165][]-[13][], and in the matter of the

guardianship of [C.C.], [M.R.] and [J.R.], docket number FG-[01]-

21-15." Defendant's counsel stated she was representing defendant

in both docket types.

 Defendant testified in response to the prior testimony,

explaining she began making payments on the electric bill, and she

had the gas turned on recently. Additionally, she testified she

was waiting to have the furnace fixed and had recently ordered a

part for it. She stated once the furnace was fixed, she would no

longer use the space heaters. In response to J.J.'s testimony,

defendant testified she worked for J.J. three to five times a week

and was paid under the table. She stated she did not need public

assistance at that time, so she did not see the point in applying.

She stated if her children were coming home, she would apply. She

 8 A-2541-15T4
was unaware no one was making payments on the house, but did not

plan to stay there long-term anyway.

 At the close of the evidence, the judge heard the arguments

of defendant's attorney who expressed concern regarding the

ambiguity of the procedural posture of the case, and argued for

continuation of the matter under the FN docket. The Deputy

Attorney General asked the judge to reopen the guardianship because

the Division had presented new evidence to establish prong two.

 The judge agreed with the Division and issued an order

terminating defendant's parental rights on February 10, 2016. The

order stated, "The guardianship docket FG-01-21-15 was reopened

sua sponte by the court as contemplated by its 1/26/16 order, and

after a full plenary hearing on the issues of [defendant's] housing

and employment, the court granted the Division guardianship." The

order further indicated the court "reverse[d] its findings with

regard to Prong 2."

 The judge supplemented the record with the testimony from

J.J. and the Division caseworker, both of whom the court found to

be reliable and credible. The judge found defendant "ha[d]

perpetrated a fraud upon the court and was dishonest in her

testimony on 1/6/16, and was dishonest in her testimony [on

2/10/16]." Further, defendant "is not willing or able to provide

a safe and stable home for the children, lacks employment or any

 9 A-2541-15T4
means to provide for the children's safety, health or development."

This appeal followed.

 On appeal, defendant argues the evidence regarding her

housing and employment was insufficient to establish the second

prong, and the conduct of the proceedings deprived her of due

process. Because we agree with defendant's second premise, we are

constrained to vacate the judgment of guardianship, and remand the

matter for further proceedings for the reasons that follow.

 Parents have a constitutionally protected right to raise

their biological children, even if the children are placed in

foster care. In re Guardianship of J.C., 129 N.J. 1, 9-10 (1992)

(citing Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388, 71 L.

Ed. 2d 599 (1982)). Although a parent's "rights are fundamentally

important, they are not absolute, and 'must be balanced against

the State's parens patriae responsibility to protect the welfare

of children.'" N.J. Div. of Youth & Family Servs. v. G.M., 198

N.J. 382, 397 (2009), (quoting N.J. Div. of Youth & Family Servs.

v. G.L., 191 N.J. 596, 605 (2007)). "In balancing those competing

concerns, a court must ensure that the statutory and constitutional

rights of the parent or guardian are scrupulously protected."

Ibid. (citing J.C., supra, 129 N.J. at 10). Among these rights

is "[d]ue process [which] requires adequate notice and a fair

opportunity to be heard." Div. of Youth & Family Servs. v.

 10 A-2541-15T4
M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003). Additionally,

"due process is flexible and calls for such procedural protections

as the particular situation demands." N.J. Div. of Youth & Family

Servs. v. R.D., 207 N.J. 88, 119 (2011).

 In R.D., supra, 207 N.J. at 108-09, our Supreme Court

addressed the differences between a Title Nine abuse and neglect

proceeding and a Title Thirty guardianship proceeding. Under a

Title Nine proceeding, "any determination that the child is an

abused or neglected child must be based on a preponderance of the

evidence." N.J.S.A. 9:6-8.46(b). By contrast, in a Title Thirty

termination of parental rights proceedings, courts must apply the

more rigorous clear and convincing evidentiary standard to the

Division's evidence proving each of the statutory prongs of the

best interest test set forth in N.J.S.A. 30:4C-15.1(a). R.D.,

supra, 207 N.J. at 113. However, "a Title Nine court that

reasonably foresees its proceedings ripening into a subsequent

Title Thirty proceeding may seek to short-circuit the duplication

of presenting proofs in a later Title Thirty proceeding" by

applying the clear and convincing standard in the Title Nine

proceeding. Id. at 120.

 To do so, the Title Nine court must provide "clear and

unequivocal" advance notice to the parties that it will make

findings under the Title Thirty "clear and convincing evidence"

 11 A-2541-15T4
standard. Ibid. The court must also "make clear to the parties

that . . . the determinations made in [the Title Nine proceeding]

may have preclusive effect on the final, permanent relief arising

out of a Title Thirty proceeding." Id. at 121. Lastly, the "Title

Nine court must relax the time deadlines and, to the extent

necessary, use in the Title Nine proceeding the admissibility of

evidence standards applicable to Title Thirty proceedings." Ibid.

 Here, the trial court dismissed the Title Thirty complaint

because the Division had not met the clear and convincing standard

of proof under prong two and warned the Title Thirty complaint was

subject to renewal, but proceeded under Title Nine. The judge

ultimately applied the clear and convincing standard at the end

of the Title Nine proceeding and sua sponte entered an order of

guardianship. However, R.D. makes clear the transition between a

Title Nine proceeding and a Title Thirty proceeding is not so

fluid.

 Here, the trial court did not provide the necessary notice

to defendant that it would apply the clear and convincing standard

of a Title Thirty proceeding when he resumed the litigation under

the Title Nine matter. "[U]nless the parties are on notice that

the Title Nine proceedings are to be conducted under the higher,

clear and convincing evidence standard constitutionally required

for Title Thirty proceedings and appropriate accommodations are

 12 A-2541-15T4
made for the fundamentally different natures of these disparate

proceedings," no "collateral or preclusive effect" may be given

to the Title Nine proceeding "in any subsequent and related Title

Thirty proceedings." Id. at 93.

 We reject the idea the error here was harmless because

defendant was on notice the guardianship proceeding might be re-

opened and she did not suffer prejudice as a result of the hearing.

The Division had not re-filed a Title Thirty proceeding seeking

termination of defendant's parental rights and did not request

such relief until the close of the hearing. The record

demonstrates the nature of the proceeding was, at best, ambiguous.

The trial judge could have signaled to the Division his conclusion

the evidence supported the re-opening of the guardianship

proceeding rather than omit the constitutionally required

protection of having the Division re-file the Title Thirty

guardianship complaint to re-litigate prong two. We understand

the court's decision, however, the rules provided a remedy if the

judge determined he needed additional evidence. Rather than

dismiss the original guardianship proceeding the judge could have

continued the guardianship proceeding pursuant to Rule 5:9-3,

which permits the court at any time during or after the hearing

to require the production of additional evidence and continue the

hearing as the situation requires. Because the judge here failed

 13 A-2541-15T4
to comply with the requisite procedural safeguards, we vacate the

judgment of guardianship and remand for additional proceedings

after proper notice and sufficient time to allow defendant to be

heard on the issues.

 Vacated and remanded for additional proceedings consistent

with this opinion within twenty-one days. Within twenty-one days,

the court shall continue the trial and allow the parties to present

additional testimony and evidence regarding prong two of the best

interests of the child test. Within seven days of the completion

of the trial, the court shall issue its final decision and opinion.

We retain jurisdiction.

 14 A-2541-15T4