# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2735-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

J.S.,

    Defendant-Appellant,

and

F.S.,

    Defendant.

_____

In the Matter of J.S.,

    a Minor.

_____

Submitted October 17, 2017 — Decided October 26, 2017

Before Judges Fisher and Fasciale.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hudson County,
Docket No. FN-09-0188-15.

Joseph E. Krakora, Public Defender, attorney
for appellant (Ryan T. Clark, Designated
Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Arriel Rubinstein, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Cory H. Cassar, Designated Counsel, on the brief).

PER CURIAM

J.S. (the mother) appeals from an April 2, 2015 order finding that she abused and neglected her child, J.S. (the child),[1] who was born in March 2013, by inadequately supervising him and failing to properly care for him while he was hospitalized. The mother argues that although she may have failed to supervise the child, her failure amounted to simple negligence. She contends therefore that the Division of Child Protection and Permanency (Division) produced insufficient evidence at the fact-finding hearing. We disagree and affirm.

In August 2014, the Division learned from a referral that the child suffered a skull fracture and subdural hematoma from falling down a set of concrete stairs at an outdoor barbeque. He remained in the hospital for more than a month due to surgery and a related infection. The Division investigated the circumstances of the fall and obtained additional information during the

---

[1] The mother and child share the same initials.

hospitalization as to the mother's interaction with the child. The Division then substantiated the abuse and neglect allegations, and conducted an emergency Dodd[2] removal after the hospital discharged the child.

The judge held a fact-finding hearing over three days. The Division produced testimony from three witnesses: caseworkers, Madeline Liriano and Zoe Casanova; and Dr. Madesa Espana, a pediatrician and the chief of child protection and safety center at St. Joseph's hospital. The mother did not testify. The judge found the Division's witnesses to be credible, rendered a thorough oral opinion, and issued the order under review.

The scope of our review of an order finding abuse or neglect is limited. N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 112 (2011). We must uphold "factual findings undergirding the trial court's decision if they are supported by 'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). Even where there are alleged errors in the judge's evaluation of underlying facts, we "will accord deference unless

---

[2] A "Dodd removal" refers to the emergency removal of a child from the home without a court order, as authorized by N.J.S.A. 9:6-8.29 of the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

the trial court's findings went so wide of the mark that a mistake must have been made." Ibid. (citation omitted).

An "abused or neglected child," is defined by N.J.S.A. 9:6-8.21(c)(4), as a child who is less than eighteen years of age and

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[;] . . . or by any other acts of a similarly serious nature requiring the aid of the court.

"'Whether a parent or guardian has failed to exercise a minimum degree of care' in protecting a child is determined on a case-by-case basis and 'analyzed in light of the dangers and risks associated with the situation.'" N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 614 (App. Div. 2010) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 181-82 (1999)). "'[M]inimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S., supra, 157 N.J. at 178. "[A] guardian [or parent] fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise

A-2735-15T3

the child or recklessly creates a risk of serious injury to that child." Id. at 181.

This standard "implies that a person has acted with reckless disregard for the safety of others." Id. at 179. Moreover, a parent may be found to have abused or neglected a child when the parent creates a substantial risk of harm, since a court "need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). Courts have recognized that a parent's inaction or unintentional conduct may amount to a finding of abuse or neglect, if there is evidence that the child was injured. G.S., supra, 157 N.J. at 175-77.

The mother admitted to Ms. Liriano that prior to the incident the child "was always running around or getting into something and she had to always watch him." According to Ms. Liriano, the child was hyperactive. The mother told Ms. Liriano that she was not directly supervising the child immediately before the fall. The judge determined that the mother should have known of the danger associated with the steps from which the child had fallen. As the judge stated "knowing that a child is as hyper as [the child] is, a reasonable person would understand the danger surrounding the concrete steps." The judge explained that the mother failed to adequately supervise the child.

5

The judge also found that the mother's actions during the child's hospitalization fell below the required degree of minimum care. Ms. Liriano visited the child in the hospital multiple times, but the mother was not present. Ms. Casanova testified that when the mother was present in the hospital with the child, the mother failed to properly bathe and feed her son. The judge further found that the mother failed to provide timely authorization for medical procedures. The judge explained

> Dr. Espana . . . saw [the child in the hospital] and there were no family members that were present. That during the course of [the child's] . . . hospitalization, there were times [when the mother] was there[,] but . . . did not soothe him when [he] had cried. Dr. Espana testified that it is comforting for a child to see [his or her] mother after coming out [of] surgery and it prevents the elevation of the child's blood pressure.
>
> She testified that it is standard to get the patient's history from the parent. However, [the mother] was not available in person to provide these details. She testified that it is common that parents are at their child's bedside [twenty-four] hours a day to care for their child's needs and also to provide consent for any additional procedures the child may need.
>
> Dr. Espana testified that [the child's] transfer to another facility was impeded when [the mother] was not present to sign the consent forms. It was delayed. She testified she was able to get a hold of [the mother] on the phone . . . to discuss [his] medical history and the incident that brought [him] to the hospital. She testified that, although

[the mother] answered all of her questions, [the mother] seemed detached and showed no rapport with [the child].

We conclude therefore that there is sufficient credible evidence to support the judge's findings that the mother abused and neglected the child by providing inadequate supervision during the time of the fall and by her interactions with him during his hospitalization.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7                                                    A-2735-15T3