# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2004-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

K.T.R.K.,

      Defendant-Appellant,

and

C.M.Y.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.A.K.,
C.S.K., and J.L.Y.,

      Minors.

_____

Submitted January 28, 2019 – Decided March 6, 2019

Before Judges Messano and Fasciale.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0040-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Theodore J. Baker, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Tara K. Catanese, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for minors (Rachel E. Seidman, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Following trial, the Family Part entered a judgment of guardianship terminating the parental rights of defendant K.T.R.K. to his three children, J.A.K. (Janet), born in February 2011, C.S.K. (Connor), born in January 2013, and J.L.Y. (Joan), born in May 2016, after the Title Thirty litigation had already commenced.[1] Defendant contends that the Division of Child Protection and Permanency (the Division) failed to prove the third and fourth prongs of the

---

[1] We use initials and pseudonyms to maintain confidentiality pursuant to Rule 1:38-3(d)(11). During the litigation, the children's mother, C.M.Y., executed an identified surrender in favor of the children's resource parents.

statutory best-interests-of-the-child test, N.J.S.A. 30:4C-15.1(a), which require proof by clear and convincing evidence that:

> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a)(3) and (4).]

As to prong three, defendant argues the Division provided "either incorrect or incomplete legal advice" regarding kinship legal guardianship (KLG) to the resource parents with whom the children had been placed and otherwise failed to make reasonable efforts directed toward reunification. As to prong four, defendant contends the judge erred in crediting the testimony of the Division's expert psychologist, Dr. Brian S. Eig, and failed to properly weigh and assess the relative bonds the children had with defendant and with their resource parents.

The Division urges us to affirm. It argues that it made reasonable efforts to assist defendant in addressing his drug abuse and other problems and did not provide improper legal advice regarding KLG, and the judge correctly assessed

3

the unrebutted expert testimony. The children's Law Guardian echoes the Division's arguments and urges us to affirm.

We have considered these contentions in light of the record and applicable legal standards. We affirm substantially for the reasons expressed in the thoughtful, comprehensive written opinion of the trial judge, W. Todd Miller. We add only the following.

"The focus of a termination-of-parental-rights hearing is the best interests of the child." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 110 (2011)). The four statutory prongs "are neither discrete nor separate. They overlap to provide a composite picture of what may be necessary to advance the best interests of the children." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005)). "We will not disturb the . . . decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We accord particular deference given the family courts' special

jurisdiction and expertise. <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 343 (2010).

As to prong three, Judge Miller detailed the services the Division offered defendant. He found that defendant's "primary obstacles" toward reunification were long histories of "criminality and substance abuse." The judge noted that defendant failed to take advantage of visitation with Janet and Connor for almost one year after the filing of the guardianship complaint. Judge Miller also found that the Division's caseworker often was unable to locate defendant to follow up with services and ultimately found defendant through the county corrections' website. At the time of trial, defendant was in custody on criminal charges alleging "possession and distribution of a half-pound of methamphetamine, in a school zone" and possession of a weapon.

N.J.S.A. 30:4C-15.1(a)(3) requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and the court to "consider[] alternatives to termination of parental rights." However, "[e]xperience tells us that even [the Division's] best efforts may not be sufficient to salvage a parental relationship." <u>F.M.</u>, 211 N.J. at 452. Moreover, "[e]ven if the Division ha[s] been deficient in the services offered to" a parent, reversal is not necessarily

"warranted, because the best interests of the child controls" the ultimate determination. N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super. 576, 621 (App. Div. 2007).

The substantial, credible evidence amply supported Judge Miller's factual findings that the Division offered defendant numerous services to address his drug abuse, and that he was unwilling or unable to use those services to his advantage. Defendant's contention that the Division failed to provide adequate reunification services lacks merit.

The Division placed all three children with relatives. Janet and Connor were placed with F.G., their maternal great aunt, and her husband, S.G., briefly at the start of the Title Nine litigation, and then again in February 2017, where they remained during the rest of the litigation and throughout trial. The G. family committed to adopt the children.

C.M.Y. denied knowing the identity of Joan's father at birth, and only later DNA testing confirmed it was defendant. Joan suffered from the effects of her mother's drug abuse and remained in the hospital for more than two weeks after her birth. Shortly after discharge, the Division placed Joan with D.Y., a maternal great uncle, with whom Joan remained through trial.

6

The Division's caseworker testified at trial that she spoke to the resource parents about the differences between adoption and KLG, and provided them with information about KLG. She told D.Y. that "KLG would mean that the parents would keep their parental rights and at any point they could file for full custody of [Joan] again[.]" D.Y. did not want to pursue KLG and told the caseworker he wanted to adopt Joan.

Defendant argues the caseworker misadvised D.Y., see N.J. Div. of Youth & Family Servs. v. H.R., 431 N.J. Super. 212, 232-33 (App. Div. 2013) (remanding because caseworker misadvised resource parent), because a parent seeking to terminate KLG bears a heavy burden. See N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 214-15 (2010) (holding that a parent seeking to terminate KLG must prove by clear and convincing evidence that he or she "has overcome the incapacity or inability to care for the child . . . and that termination of [KLG] is in the best interest of the child") (citing N.J.S.A. 3B:12A-6(f)).[2]

In later testimony, the caseworker explained that she reviewed the Division's "checklist" with the resource parents. When asked by Judge Miller, she confirmed that the checklist explains the "higher than ordinary" burden a

_____

[2] It is unclear whether defendant ever raised this argument before Judge Miller, but we address it for the sake of completeness.

parent must meet "to get the child back." Judge Miller specifically found the caseworker to be a credible witness. Since the court may only grant KLG status when "adoption of the child is neither feasible nor likely[,]" N.J.S.A. 3B:12A-6(d)(3), KLG was not a viable option in this case. We therefore reject defendant's arguments as to prong three.

Prong four "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 609 (2007). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108.

Judge Miller credited Dr. Eig's unrebutted expert opinion based on more than one dozen evaluations of the parties that defendant's prognosis for ever being able to parent his children was "poor," because defendant "ha[d] not proven he c[ould] be successful in his recovery and remain clean and out of criminal trouble." The judge also accepted Dr. Eig's opinion that the children's resource parents could address any harm Janet and Connor would suffer from severing their bonds with defendant, and that Joan had no bond with defendant. The judge acknowledged that defendant could ameliorate any harm Janet and

Connor might suffer if separated from their resource parents, "but only if he abstained from using opiates and remained out of jail, which he did not."

Judge Miller based his factual findings and legal conclusions as to prong four on the substantial credible evidence in the record. To the extent we have not addressed defendant's specific arguments on the issue, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2004-17T3