# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2868-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

H.D.C.,

      Defendant-Appellant,

and

A.A.-S.W.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.J.C.-W.
and A.R.C.-W.,

      Minors.

_____

Submitted June 4, 2019 – Decided July 3, 2019

Before Judges Messano and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0174-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc R. Ruby, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Merav Lichtenstein, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (David Ben Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant H.D.C. appeals the Family Part's February 14, 2018 order terminating her parental rights to two of her children, A.J.C.-W. (Avery), born in 2012, and A.R.C.-W. (Anna), born in 2013.[1] During the course of the litigation, the children's father, A.A.-S.W. (Andrew), entered into a voluntary identified surrender of his parental rights in favor of B.W. (Barbara), the children's paternal grandmother, with whom they were placed after removal

---

[1] We use initials and pseudonyms to protect the confidentiality of those involved pursuant to Rule 1:38-3(d)(12).

from defendant's and Andrew's care.  Defendant's two other older children are not subjects of this appeal.[2]

Defendant contends that the Division of Child Protection and Permanency (the Division) failed to prove the second and fourth prongs of the statutory best-interests-of-the-child test, N.J.S.A. 30:4C-15.1(a), which require proof by clear and convincing evidence that:

> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> . . . .
>
> (4) Termination of parental rights will not do more harm than good.

The Division and the children's Law Guardian urge us to affirm the judgment.

We have considered defendant's arguments in light of the record and applicable legal standards.  We affirm.

---

[2]  Defendant surrendered her parental rights to one of the older children during the pendency of the litigation, and an order of kinship legal guardianship was entered as to the other child.

A-2868-17T1

I.

The Division had been involved with the family for many years prior to the January 2014 referral that sparked the removal of all four children from defendant's care. Avery sustained a burn on his collarbone and shoulder, which, investigation revealed, defendant's older children caused with a cigarette lighter. Defendant failed to seek any medical treatment for Avery, and school authorities indicated the two older children had missed many school days. The family's home was dirty and unkempt; it lacked a refrigerator and stove; the children slept on mattresses without sheets. The Division executed an emergency removal and eventually placed Avery and Anna with Barbara, where they remained throughout the litigation. Barbara expressed a desire to adopt both of them.

The Division proposed and the court accepted the permanency plan of termination with adoption in December 2014, after defendant's initial participation in substance abuse treatment and counseling was unsuccessful. However, in March 2016, after defendant demonstrated completion of other services, obtained employment and presented a plan to provide a stable residence for the children, the court approved a revised plan for reunification. Defendant was granted unsupervised visitation with Avery and Anna.

 A-2868-17T1

However, defendant repeatedly failed to attend psychological therapy sessions, leading to termination of those services. In late September 2016, defendant relocated to New York, where she was employed and resided with her partner. She failed to contact the Division after her relocation. In October, the Division asked the court to suspend defendant's unsupervised visitation. Due to defendant's relocation, from September 2016 until January 2017, defendant only saw the children once.

Upon her relocation to New Jersey, the Division again referred defendant for individual therapy, but she failed to comply, claiming it was inconvenient to go to the doctor's office. In January 2017, the court found that defendant failed to: comply with her recommended services; remain in contact with the Division; and visit her children while she was in New York. Accordingly, the court modified the permanency plan again, from reunification to termination.

At the guardianship trial before Judge Linda Lordi Cavanaugh, which commenced in December 2017, the Division offered the testimony of its caseworker, Angel Brown, and Dr. Mark David Singer, its expert. Judge Cavanaugh ruled on the admission of certain documentary evidence, which largely recounts the details set forth above.

Although defendant did not testify, the judge admitted documentary evidence purporting to be recent paystubs for defendant and her partner, and a written receipt of partial payment for an apartment in defendant's and her partner's name.

## II.

### A.

We set forth the well-known standards that guide our review. The trial court's findings will be upheld if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the factual findings of the trial judge, who had "the opportunity to make first-hand credibility judgments about the witnesses . . . [and] ha[d] a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We accord even greater deference to the Family Part's factual findings because of its "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

6

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." R.G., 217 N.J. at 552-53 (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"The focus of a termination-of-parental-rights hearing is the best interests of the child." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 110 (2011)). The four statutory prongs "are neither discrete nor separate. They overlap to provide a composite picture of what may be necessary to advance the best interests of the children." M.M., 189 N.J. at 280 (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005)).

B.

Under N.J.S.A. 30:4C-15.1(a)(2), "the inquiry centers on whether the parent is able to remove the danger facing the child." F.M., 211 N.J. at 451 (citing In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999)). "Prong two

may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from the disruption of [the] bond with foster parents.'" Ibid. (quoting K.H.O., 161 N.J. at 363); see also N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004) ("[T]he . . . statute[] reflect[s] reforms acknowledging the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child.").

Defendant contends that the Division failed to prove prong two because she did not abandon her children during a "three[-]month furlough" in New York, but rather was seeking appropriate employment in an effort to provide them with financial security. Defendant contends that by the time of trial, she had established a stable relationship with her partner, had adequate housing for herself and the children, and was gainfully employed.

However, Judge Cavanaugh's factual findings detail defendant's failure to comply with services during the months that preceded the "furlough." Defendant missed visitations with the children and failed to attend "numerous individual therapy appointments." Noting the litigation had "been ongoing since 2014," the judge concluded that defendant was "well aware of what was required of her . . . to achieve [re-]unification." Noting that defendant failed to secure

8

suitable housing for the children until "the end of 2017," only "after the children had been in placement almost four years . . . ."

Judge Cavanaugh also considered the expert testimony of Dr. Singer who had evaluated defendant and conducted bonding evaluations. The judge credited the doctor's conclusion that defendant "was simply unable or unwilling to put the needs of the children before her own[,]" and the children would "experience serious and enduring emotional and psychological harm" if they lost their relationship with Barbara. See F.M., 211 N.J. at 451.

In the end, defendant's efforts to address the initial circumstances that harmed her children, however genuine, came too late. Avery and Anna have the right to permanency, and defendant has no right to delay that security while the Division, her children, and the court wait to see if she succeeds.

C.

The fourth prong serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." Id. at 453 (quoting G.L., 191 N.J. at 609). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108. Typically, "the [Division] should offer testimony of a

well[-]qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting M.M., 189 N.J. at 281).

Defendant argues the judge made findings regarding the bonds between her and the children based upon a "stale, and admittedly chaotic, [Division]-proffered bonding evaluation," not upon competent expert testimony. We disagree.

Judge Kavanaugh found that with the exception of "the few overnight visits that occurred as part of the failed attempt at reunification," the children had been in Barbara's care for approximately four years, and Barbara had met their needs. Defendant, on the other hand, "shows affection to her children[,]" but "[h]er behavior at the visits . . . cannot equate to the provision of care, nurture and stability [Barbara] has shown every day for four years."

The judge credited Dr. Singer's observations during the bonding evaluations that the children were "more physically aggressive and . . . difficult to manage when they were with [defendant,]" and "expressed anger . . . [and] distrust [of] her." The judge accepted the doctor's conclusion that severing the children's relationship with defendant would not result in "significant and

enduring harm" and Barbara would be able to mitigate whatever harm occurred. Rupturing their bond with Barbara, however, would cause "feelings of loss, insecurity and low self-esteem" in the children.

We defer to the trial judge's factual findings and evaluation of the expert testimony, where she had the opportunity to assess Dr. Singer's credibility, including the factual underpinnings of his opinions. Critically, while Dr. Singer had conducted the evaluations nearly nine months earlier, when confronted with developments in defendant's life since, he stated his opinions had not changed.

In sum, our review leads us to conclude that Judge Kavanaugh's findings and conclusions are supported by the substantial, credible evidence in the record, and the Division carried its burden of proof as to the second and fourth prongs of N.J.S.A. 30:4C-15.1(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2868-17T1