# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2518-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

L.R.,

      Defendant-Appellant,

and

S.B.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF B.R.,

      a Minor.

_____

      Submitted November 4, 2019 – Decided December 11, 2019

      Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0199-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Lauren Derasmo, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Amanda D. Barba, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

The Family Part judge terminated the parental rights of defendant L.R., mother of B.R. (Barbara), born in May 2016.[1] Defendant contends the Division of Child Protection and Permanency (the Division) failed to adduce clear and convincing evidence at the guardianship trial as to all four prongs of the statutory best-interests-of-the-child test, N.J.S.A. 30:4C-15.1(a). The Division

---

[1] The judgment of guardianship also terminated the parental rights of Barbara's father, S.B., who did not appear at trial and has not appealed. We use initials and fictitious names to protect the privacy of the parties and child. R. 1:38-3(d)(12).

contends otherwise and urges us to affirm the judgment. Barbara's Law Guardian likewise argues that the evidence was sufficient, and we should affirm.

After carefully reviewing the evidence at trial, we affirm.

I.

A Jersey City hospital made a referral to the Division in the early morning hours of June 30, 2017, after police found defendant intoxicated, walking barefoot and screaming in the middle of the street while holding one-year-old Barbara. At the time, defendant and the child were living in a shelter in Newark because defendant had been terminated from a transitional housing program due to non-compliance with its rules. The Division effected an emergency removal of Barbara.

Defendant offered S.P., the aunt of her paramour at the time, as a placement resource, however, after inspecting both S.P.'s current and future residence, the Division concluded neither was appropriate. The Division referred defendant for services, including substance abuse counseling, housing assistance programs, and parenting classes. Defendant was discharged from the substance abuse program for non-compliance and after testing positive for alcohol. Defendant continued to test positive for alcohol consumption in the ensuing months, and she missed several appointments for evaluations.

In June 2018, the court ordered the Division to evaluate F.M., Barbara's paternal great-grandfather, as a placement resource, despite his previous refusal. F.M. was already caring for defendant's two older children without Division assistance. The Division ruled out F.M. after he indicated again that he was unable to care for a third child. In July 2018, the Division filed this guardianship complaint.

In October, defendant was again terminated from an outpatient alcohol treatment program after testing positive and missing more than half of her scheduled sessions in September. The Division unsuccessfully attempted to place defendant in an inpatient program. On October 28, 2018, defendant gave birth to another child.[2]

At the guardianship trial that commenced in early January 2019, the Division called Dr. Gerard A. Figurelli as its expert, as well as its caseworker, Betty Mata, and M.M., Barbara's resource parent, who wished to adopt her. Defendant testified on her own behalf.

Dr. Figurelli described the psychological evaluations he performed on defendant. He diagnosed her with substance abuse disorder and noted that

---

[2] The record does not disclose what if any immediate action the Division took after the birth of this baby girl. However, it was revealed at trial that she was in the custody of her father.

defendant showed no signs of improvement over the course of the litigation. He stated that defendant continued to minimize or deny her problem, and Dr. Figurelli opined that defendant would not be able to successfully parent Barbara in the reasonably foreseeable future.

Dr. Figurelli also testified regarding the bonding evaluations he performed with defendant and Barbara, and M.M. and Barbara. He characterized the bond between L.R. and Barbara as "positive, but limited," stating the relationship was best characterized as an attachment rather than a bond, because "a bond is . . . more fully developed." Dr. Figurelli described the bond between M.M. and Barbara as a "developing significant positive reciprocal" bond and opined that M.M. was Barbara's central parental attachment which is "synonymous with her psychological parent." He opined that Barbara was at risk of "significant harm" if removed from M.M.'s care, and her needs were best served by M.M.'s adoption.

Mata detailed the history of the Division's involvement with defendant, her inconsistent attendance record at referrals and her supervised visitation with Barbara. M.M. testified as to the strong bond she had developed with the child during the one and one-half year Barbara spent in placement with her, and M.M. expressed her desire to adopt Barbara.

Defendant testified that she experienced mixed success with the programs to which the Division referred her, in part, because of conflicts with her work schedule. She highlighted her participation in outpatient treatment, although she believed she required inpatient substance abuse counseling. Defendant described the unsuccessful attempts she made at trying to enroll in such a program, but admitted she had not called any inpatient program to see if there were open beds since October 2018. At the time of trial, defendant resided with her stepmother and believed the apartment was large enough to accommodate Barbara. Defendant was no longer working full-time but had a "contract" with a temporary employment agency and was able to "pick up a shift."

For reasons stated in her comprehensive written opinion, and which we discuss below, Judge Bernadette N. DeCastro concluded the Division had proven all four prongs of N.J.S.A. 30:4C-15.1(a). She entered the judgment of guardianship and this appeal followed.

## II.

Under our standard of review, we must uphold the trial court's findings if "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's factual findings because she had "the opportunity to make first-hand credibility

judgments about the witnesses . . . [and] ha[d] a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We accord even greater deference to the Family Part's factual findings because of its "special jurisdiction and expertise in family matters[.]" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

"The focus of a termination-of-parental-rights hearing is the best interests of the child." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 110 (2011)). The four statutory prongs "are neither discrete nor separate. They overlap to provide a composite picture of what may be necessary to advance the best interests of the children." M.M., 189 N.J. at 280 (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005)).

Pursuant to the first prong of the statute, the Division must establish "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]"  N.J.S.A. 30:4C-15.1(a)(1).  "[T]he Division must prove harm that 'threatens the child's health and will likely have continuing deleterious effects on the child.'" N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 25 (2013) (quoting In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999)).  The Division need not "wait 'until a child is actually irreparably impaired by parental inattention or neglect.'" F.M., 211 N.J. at 449 (quoting In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)).

Defendant contends that her temporary lack of stable housing was insufficient to establish harm to Barbara under prong one.  However, the argument fails to address the full weight of Judge DeCastro's findings, all of which were amply supported by the evidence.

For example, Judge DeCastro credited Dr. Figurelli's testimony and found that defendant failed to internalize the cause of her substance abuse, and because she had no "insight into the cause, she will not be ready to sustain sobriety." The judge noted that defendant's failures to maintain employment to support herself and Barbara "add[ed] to the harm," and caused Barbara to continue to reside in foster care for more than one-half of her young life.  This evidence

8

coupled with the actual circumstances that led to Barbara's removal in the first place provided clear and convincing evidence of actual harm and future potential harm to the child.

The second prong of the best-interest test requires the Division to demonstrate that "[t]he parent is unwilling or unable to eliminate the harm facing the child . . . and the delay in permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2).  "[T]he inquiry centers on whether the parent is able to remove the danger facing the child."  F.M., 211 N.J. at 451 (citing K.H.O., 161 N.J. at 352).  This prong may be proven by "indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, [and] the inability to provide a stable and protective home[.]"  K.H.O., 161 N.J. at 353.  "Prong two may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from the disruption of [the] bond with foster parents.'"  F.M., 211 N.J. at 451 (alterations in original) (quoting K.H.O., 161 N.J. at 363).

Defendant again argues that Judge DeCastro focused solely on defendant's housing situation.  She contends the trial evidence did not support the judge's conclusion that defendant was unable to maintain sobriety for more than "a few weeks."

However, the judge credited Dr. Figurelli's opinion that defendant was unlikely to become a fit parent in the near future and found any further delay in placement would additionally harm Barbara. The judge noted that defendant failed to complete any outpatient treatment program and admitted imbibing alcohol only a few weeks before trial. The proof as to prong two was clear and convincing.

N.J.S.A. 30:4C-15.1(a)(3) requires the Division make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,]" and the court to "consider[] alternatives to termination of parental rights[.]" Defendant's argument as to prong three is two-fold. She contends the Division did not make reasonable efforts toward reunification because it failed to place defendant in a court-ordered inpatient treatment program. Defendant also argues that the Division failed to consider Barbara's placement with a family member. We reject both aspects of the argument.

"Experience tells us that even [the Division's] best efforts may not be sufficient to salvage a parental relationship." F.M., 211 N.J. at 452. Moreover, even if the Division provides deficient services to a parent, reversal is not necessarily warranted, "because the best interests of the child controls" the

ultimate determination. N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super. 576, 621 (App. Div. 2007).

Here, Judge DeCastro credited Mata's testimony regarding the services provided to defendant and the Division's efforts to place defendant in an inpatient substance abuse program. The judge specifically found that "[d]espite diligent attempts . . . to secure an inpatient program for [defendant], the Division was unable to do so because the programs did not have availability." That finding is amply supported by the record evidence.

Judge DeCastro also found that the Division considered placement with two relatives, S.P. and F.M., both of whom were ruled out. Defendant claims the Division's assessment of S.P.'s home as unsuitable is not supported by the record, but we disagree. The documentary evidence at trial demonstrates when the Division visited S.P.'s home immediately after Barbara's removal, S.P. stated she was moving in two days. When the Division inspected S.P.'s new accommodations, it found they lacked a functioning kitchen and bathroom, something the caseworker observed again when she revisited a few days later. In addition, defendant was residing with S.P. as of August 2017, which made the apartment an unsuitable resource placement.

The fourth prong of the statute requires the court to determine that termination "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). It serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211 N.J. at 453 (quoting G.L., 191 N.J. at 609). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108. Typically, "the [Division] should offer testimony of a well[-]qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting M.M., 189 N.J. at 281).

Defendant claims Judge DeCastro ignored the record evidence demonstrating a strong bond between her and Barbara, including the positive visitations and the child's demeanor. Defendant argues Dr. Figurelli's testimony regarding the bonding between her and Barbara was "contradictory and lacked credibility."

Judge DeCastro noted that the Division's expert testimony was unrebutted at trial, and she credited Dr. Figurelli's opinions. She found that defendant was not likely to be able to successfully parent Barbara "now or in the foreseeable

12                                                              A-2518-18T2

future."  She also concluded that rupturing the bond Barbara developed with M.M. would cause the child harm, whereas any harm suffered from terminating defendant's parental rights could be mitigated by M.M.'s adoption.  We defer to the judge's credibility findings since she had the opportunity to observe the witnesses and weigh their testimony in the context of the entire case.  E.P., 196 N.J. at 104.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION